No. 47,163

STATE OF KANSAS, *Appellee,* v. ZELDA HATFIELD, *Appellant.*

(518 P. 2d 389)

Opinion filed February 26, 1974.

*John F. Christner,* of Abilene, argued the cause and was on the brief for the appellant.

*Gordon Davis, Jr.,* County Attorney, argued the cause, but filed no brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: The defendant, Zelda Hatfield, appeals from a misdemeanor conviction for obstructing legal process or official duty as defined by K. S. A. 1973 Supp. 21-3808. Defendant waived a jury trial and was tried and convicted by the court. The basis of the charge is defendant's alleged refusal to unlock the doors of her home at the request of the sheriff who was attempting to serve an order of protective custody upon defendant's fourteen year old daughter. The facts surrounding the incident are not in dispute.

On application of Linda Field, a social worker for the county welfare department, the probate court of Dickinson County, on August 11, 1972, issued an order of protective custody directing the sheriff and Linda Field to take Toni Lea Martin into custody and transport her to the State Hospital in Topeka. The order directed that Toni Lea be held in protective custody pending a hearing on an application to determine her alleged mental illness.

Sheriff Anderson, accompanied by Linda Field and another welfare worker from the county welfare department, proceeded to the Hatfield home about 10 a. m. on August 11, 1972. The sheriff testified he found no one at home, that he left and returned again at

10:30 a. m. The sheriff's testimony describing subsequent events is narrated in the record as follows:

". . . Upon knocking at the front door two girls appeared and looked out through the glass. Mrs. Hatfield, mother of said Toni Lea Martin soon thereafter arrived at the residence and inquired what the Sheriff was doing there. Sheriff talked to Mrs. Hatfield for some length of time and stated that he would like to have her cooperation in making the daughter available for service of the order. Sheriff requested Mrs. Hatfield to admit them into the house and she stated that she had a key and Sheriff later made entrance into the house by force. Sheriff testified that Mrs. Hatfield was present for about an hour and fifteen minutes at the home until entry was made. Sheriff further testified that a storm door and the main door were both locked prior to entry. . . ."

The sheriff further testified that it was necessary to force both the storm door and the main door to gain entry to the house.

Mrs. Hatfield's testimony, in pertinent part, is narrated:

". . . Defendant stated that upon her arrival at residence, the girls were already in the house with the door locked and Defendant didn't see there was anything else for her to do. Defendant testified that she did not give her consent to Sheriff taking juvenile daughter. That Undersheriff may have requested Defendant to open the door. That her children were usually obedient but Defendant testified that in this case if she had requested children to open the door, the Defendant thought they would not do so."

Linda Field testified that more than one request was made of defendant to admit the sheriff to her house, but in each instance her response was negative.

The offense was charged under 21-3808 which reads:

"Obstructing legal process or official duty is knowingly and willfully obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty.

"Obstructing legal process or official duty in a case of felony is a class E felony. Obstructing legal process or official duty in a case of misdemeanor or a civil case is a class A misdemeanor."

With respect to obstructing process in civil or misdemeanor cases the statute's predecessor, K. S. A. 21-718, defined the offense in essentially the same terms, employing the words "obstruct," "resist" or "oppose."

After hearing the evidence the trial court determined that acts of obstructing, resisting or opposing could be acts of either omissions or commissions. The court then reasoned:

". . . The court believes here that this defendant committed an act of omission, in that the obligation of the legal guardian or the natural guardian is to see that children, her children, are serviceable by legal process, and not to deter this service. It appears to the court that there are no facts in this case where the defendant in any way took any affirmative step to have carried out upon her ward, her child, the process of the court, being at a judicial notice that there are legal methods and manners by which process can be deterred which are available to the public.

"The Court therefore finds that, by obligations, the defendant did obstruct and oppose the service of the process, and therefore finds the defendant guilty as charged in the complaint."

The trial court mentioned that in arriving at its decision it had relied on our opinion in *State v. Merrifield,* 180 Kan. 267, 303 P. 2d 155.

The state did not file a brief on appeal; however, the present county attorney appeared at oral argument. He explained that his predecessor in office had filed the charges and tried the case.

On appeal, defendant contends the trial court erred in finding that the acts of defendant, which were labeled as acts of omission, were sufficient to bring her conduct within the scope of the statute. Defendant also maintains the state must show that defendant had the capability to unlock the door before her refusal could be considered as conduct in violation of the statute.

As indicated, the trial court relied upon our decision in *State v. Merrifield,* supra. The facts in *Merrifield* are not analogous to the situation in the instant case, neither does the interpretation of G. S. 1949, 21-718 [now K. S. A. 1973 Supp. 21-3808], appearing in the opinion, support the conviction here. In *Merrifield* defendant had been arrested and was in custody. While enroute to jail the defendant persuaded the sheriff to drive by defendant's farm in order that he might turn off lights and lockup. Upon arrival at the farm, defendant went into the house, locked the door, and refused to come out on demand of the sheriff. Defendant was convicted. On appeal defendant contended that since he used no force resisting the sheriff his conviction could not stand. This court rejected defendant's contention, holding that the statute did not require direct force; and that the conduct prohibited by the statute included willful acts of obstruction or opposition.

The statute, in its present form, was considered by this court in the recent case of *State v. Pruett,* 213 Kan. 41, 515 P. 2d 1051. In *Pruett* Justice Prager speaking for the court interpreted the *Merrifield* holding in this fashion:

". . . [W]e held that G. S. 1949, 21-718, pertaining to obstructing legal process or official duty included any willful act which obstructs or resists or opposes an officer in the discharge of his official duty and does not necessarily require the employment of direct force or the exercise of direct means. . . ." (pp. 50, 51.)

In the instant case, taking the evidence most strongly against the defendant, the state has shown nothing more than that she refused to comply with the request of the sheriff to unlock the doors of her house in order that he might enter and serve a protective custody order upon her fourteen year old daughter. There is no evidence that she physically attempted to block or obstruct the sheriff's entrance nor is there any evidence of trickery or deceit on the part of defendant that in any way impeded the sheriff. In this case the storm door and main door were locked upon the sheriff's arrival. Defendant did not lock the doors and then hinder or prevent the sheriff's access by refusing to unlock as was the case in *Merrifield.* Moreover, there is no evidence here that defendant could have unlocked or unbarred the two dors even if she had attempted to do so.

In *State v. Goering,* 193 Kan. 307, 392 P. 2d 930, a conviction under G. S. 1949, 21-718 [now K. S. A. 1973 Supp. 21-3808], was upheld, but the evidence revealed forceful and overt acts on the part of defendant.

In an almost identical factual situation, the Supreme Court of Georgia in *Vince v. State,* 113 Ga. 1070, 39 S. E. 435, was called upon to consider the Georgia prototype of K. S. A. 1973 Supp. 21-3808. The Georgia statute, like the Kansas Act, embodied the words "obstruct," "resist" or "oppose." In reversing a judgment of conviction the Georgia court held:

"Merely refusing, upon the demand of a levying officer, to unlock a door of a house, in order to enable him to enter the same for the purpose of levying a lawfull process upon goods therein contained, is not a violation of section 306 of the Penal Code, which makes it a misdemeanor to 'knowingly and willfully obstruct, resist, or oppose any officer of this State, or other person duly authorized, in serving or attempting to serve or execute any lawful process or order.'" (Syl.)

In the instant case, it affirmatively appears from the record that the defendant did not obstruct, resist, impede or oppose the sheriff, but, at most, simply refused to assist him in executing the process in his hands. The locked and barred doors were not defendant's doing nor is there evidence that she could have opened them or persuaded her daughter to do so.

It is our conclusion that the facts established do not constitute an offense against the statute.

The judgment is reversed.