No. 56,410

STATE OF KANSAS, *Appellee,* v. KATHERYN R. PARKER, and ANTONIO R. BARZEY, *Appellants.*

(690 P.2d 1353)

Opinion filed November 30, 1984.

*William K. Rork,* of Topeka, argued the cause and was on the brief for the appellants.

*Sue Carpenter,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Gene M. Olander,* district attorney, were with her on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in two criminal cases which were consolidated and tried together in district court. The defendant Katheryn R. Parker was convicted of prostitution (K.S.A. 21-3512[c]) and obstruction of official duty (K.S.A. 21-3808). The defendant Antonio R. Barzey was convicted of obstruction of official duty.

The facts in the case were essentially undisputed and are as follows: On February 16, 1983, an investigator with the Shawnee County District Attorney's Office went to the French Chalet massage parlor in Shawnee County to attempt to make a prostitution case. He had in his possession four marked $20 bills. He was given 20 minutes to make a case before other officers would move in. The investigator entered the establishment and encountered the defendant Parker dressed in a red swim suit and high heels. He was advised by Parker that the establishment had a $20 special and other sessions would be discussed with more detail in the bedroom. The investigator handed Parker a $20 bill and was led to the back bedroom where he was told to completely undress. A little later, Parker came back to the room and described the proposed sessions in more detail. Parker sat on the bed and, using gestures, indicated to the investigator that for $20 he would receive a stroking of his genitals. He understood that to mean she would masturbate him. She then described other acts by gestures and explained how much they would cost. In the course of the investigation the investigator handed her three additional $20 bills making a total of $80. Then certain sexual acts took place. The investigator decided that things had gone far enough. He got off the bed on the pretense of going to the bathroom. He dressed, advised her that she was under arrest, and stepped outside to give a signal to waiting police officers. The investigator testified that, as he signaled, he glanced back and saw a "bare rear end" running toward the part of the premises where the kitchen was located. Immediately thereafter, he heard a grinding noise which may have been the garbage disposal unit.

At this point, detective Larry Dixon entered the establishment. The investigator told him that he had advised Parker she was under arrest. Then defendant Barzey entered the room and stated he was the proprietor of the establishment. Dixon proceeded to read Parker and Barzey their *Miranda* rights but did

not then place Barzey under arrest. Dixon advised the defend-. ants that anything they might say would be used against them in a court of law. He then asked Barzey if he was willing to turn over the marked money. Barzey replied that he did not know what money he was talking about. Thereafter, detective Jack C. Metz entered the establishment and was advised that defendant Parker was under arrest for prostitution and further that no one inside claimed they knew anything about the money. At that point, detective Metz advised Parker and Barzey that the money could be recovered in one of two ways. It could either be turned over voluntarily or a search warrant would be obtained. Detective Metz testified that when he asked defendant Barzey about the money, Barzey replied, "I don't know what money you are talking about." Metz also testified that he asked defendant Parker if she had been advised of her rights and if she understood them, and she stated that she did. When asked about the money, Parker answered, "I don't know what money you are talking about."

At that point, the police officers obtained a search warrant and returned to the premises. They then conducted a search and found the marked $20 bills partially chopped up in the garbage disposal. They also found on a desk top a handwritten note which was admitted into evidence as exhibit No. 13 and which will be discussed later in the opinion. Thereafter, Parker was charged with prostitution and obstruction of official duty. Barzey was charged only with obstruction of official duty. The defendants were tried by a jury and found guilty as charged. They filed a timely appeal.

The first issue raised on the appeal is applicable only to defendant Parker. She maintains that K.S.A. 21-3512(c) is unconstitutionally vague because the language used in the statute is so indefinite and uncertain that persons of common intelligence must necessarily guess as to its meaning and differ as to its application. Defendant Parker also claims that the statute is unconstitutionally overbroad. We will first consider the defendant's contention that the statute is unconstitutionally vague.

K.S.A. 21-3512, which creates the statutory crime of prostitution, provides as follows:

"21-3512. **Prostitution.** (1) Prostitution is performing for hire, or offering or agreeing to perform for hire where there is an exchange of value, any of the following acts:

"(a) Sexual intercourse; or

"(b) oral or anal copulation; or

"(c) manual or other bodily contact stimulation of the genitals of any person with the intent to arouse or gratify the sexual desires of the offender or another.

"(2) Prostitution is a class B misdemeanor."

Counsel for defendant Parker complains that nowhere within the Kansas criminal code can there be found a definition of "prostitution," "performing for hire," or "exchange of value." He concedes that the words sexual intercourse and oral or anal copulation are fairly understandable, but that the language in section (c), which proscribes "manual or other bodily contact stimulation of the genitals of any person with the intent to arouse or gratify the sexual desires of the offender or another" is not sufficiently clear to warn a reasonable person as to the conduct prohibited. We find this point to be without merit. In *State v. Huffman,* 228 Kan. 186, 612 P.2d 630 (1980), the test to determine whether a criminal statute is unconstitutionally vague and indefinite is set forth in Syl. ¶ 5 as follows:

"The test to determine whether a criminal statute is unconstitutionally vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process."

When we apply this test, we have no hesitancy in holding that K.S.A. 21-3512 is not unconstitutionally vague and indefinite. The statute contains words which are commonly used. It uses no legal or technical terms which would make it difficult to understand. The terms, "perform for hire" or "exchange of value" are phrases which are easily understandable by the common person. Likewise, any citizen of common intelligence in reading the statute should be aware of what actions are criminally sanctioned under section (1)(c). We hold that the statute is not unconstitutional because of vagueness.

The defendant makes a short argument that the statute is overly broad because it does not except sexual acts which occur between husband and wife. In *Huffman,* it is stated that an overbroad statute makes conduct punishable which under some circumstances is constitutionally protected from criminal sanctions. 228 Kan. 186, Syl. ¶ 2. As far as marriage partners are

concerned, it is highly unlikely that they would engage in sexual relations "for hire" or "exchange of value." The statute is obviously designed to prohibit prostitution which is defined in Black's Law Dictionary as "common lewdness for gain." Prostitution has often been referred to as the oldest profession in the world. We hold that the statute is not constitutionally overbroad.

The second point raised by the defendants on the appeal is that the trial court erred in admitting into evidence State's Exhibit No. 13, handwritten notes which were discovered on the top of a desk in the dining area of the French Chalet during a search under authority of a search warrant authorizing the officers to search for the marked money which had been handed by the investigator to the defendant Parker during the transactions discussed above. The handwritten notes were written on plain sheets of paper and, in substance, gave specific instructions as to what the "girls" were to do if the police arrived to make a bust for prostitution. The first page of the notes started out as follows:

"Yesterday there <u>was</u> a bust at Country Club; here is what the girls need to do to reduce a chance of anything of the kind occurring over here."

This sentence was followed with six suggested actions to be taken by the girls. They included asking certain questions of every prospective customer, checking everyone's ID, using hand signals to explain sessions, and emphasizing that nothing compromising should be *said* to the customer. The girls were to be admonished not to *verbally* confirm any customer's description of any compromising act she was doing during a session. It was suggested that music should be on in a room during any session to neutralize any possible "bugs." It was suggested that if any group of customers or suspicious individuals come to the door when a session was in process, not to open the door. Finally, the note suggested that, if any attempt to forcibly enter the trailer was made, money for every session in progress should be quickly destroyed. The note was signed with the initials ARB. The full name of defendant Barzey is Antonio R. Barzey.

The defendants contend that Exhibit No. 13 was not admissible because it was outside the scope of the search warrant and, hence, was improperly seized. The State contends that the officers seized the note as evidence in full compliance with the so-called "plain view doctrine." The record in this case discloses that the officers who discovered and seized the handwritten

notes were in the process of executing a search warrant authorizing them to search for and to seize the four marked $20 bills. The State concedes that the handwritten notes were not listed on the search warrant. This requires us to reexamine the "plain view doctrine" and determine its applicability in the case now before us.

In *State v. Galloway*, 232 Kan. 87, 652 P.2d 673 (1982), it was held that searches conducted by police officers for items not listed in the search warrant are *per se* unreasonable under the Fourth Amendment to the United States Constitution—subject only to certain well-established and well-delineated exceptions. Absent one of these exceptions, the seizure of items not specifically listed in a search warrant is unconstitutional. The "plain view" exception to the Fourth Amendment applies only when three necessary elements are present: (1) The initial intrusion which afforded authorities the plain view is lawful; (2) the discovery of the evidence is inadvertent; and (3) the incriminating character of the article is immediately apparent to searching authorities. In *Galloway*, it is stated that for an object to be incriminating for constitutional purposes, the seizing authority need only have reasonable or probable cause to believe that the object is evidence of a crime. These three basic requirements for the plain view exception were adopted and approved by the United States Supreme Court in *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022, *reh. denied* 404 U.S. 874 (1971). The opinion in *Galloway* also discusses other federal cases and Kansas cases where the plain view doctrine has been involved.

In this case, counsel for the defendants in his brief concedes that the first two requirements for application of the "plain view" doctrine, as stated in *Galloway*, have been satisfied. It is undisputed that the police officers were making a search of the premises with a search warrant and, therefore, the initial intrusion which afforded the officers the plain view was lawful. It is further undisputed that the discovery of the handwritten notes was inadvertent. The defendants contend, however, that the third requirement was lacking, because the incriminating character of the handwritten notes was not immediately apparent to the searching officers.

We have no hesitancy in holding in this case that the incri-

minating nature of the handwritten notes, the evidence found in plain view, was immediately apparent to the searching officers. The handwritten notes were observed by the officers as they lay on the top of a desk in the dining area of the French Chalet. A mere glance at the first page of the notes would reveal to any reasonable person that the instructions written thereon pertained to the operation of some type of illegal enterprise. The notes constituted evidence that the premises were being maintained for purposes of prostitution. We hold that the trial court did not err in refusing to suppress the handwritten notes on the basis that the seizure of the notes violated the Fourth Amendment to the United States Constitution.

We likewise hold that there was a sufficient foundation presented for the admission of the notes into evidence. The charges were prostitution and obstruction of official duty. The notes were clearly evidence to show the nature of the activities being carried out on the premises. The notes obviously were written by one in authority. It was undisputed that defendant Barzey was the proprietor of the establishment. Under all the circumstances, the trial court did not err in holding that there was sufficient foundation laid for the admission of Exhibit No. 13.

The third point raised by the defendants is that the evidence presented at the trial was insufficient to sustain their convictions. The scope of appellate review should be noted. In *State v. Racey,* 225 Kan. 404, 590 P.2d 1064 (1979), this court stated:

"On appellate review the question is not whether the evidence establishes guilt beyond a reasonable doubt but whether evidence was sufficient to form a basis for a reasonable inference of guilt." Syl. ¶ 2.

"In considering the sufficiency of evidence to sustain a conviction, this court looks only to the evidence in favor of the verdict, it does not weigh the evidence, and if the essential elements of the charge are sustained by any competent evidence the conviction stands." Syl. ¶ 3.

As to the sufficiency of the evidence to prove the charge of prostitution against defendant Parker, we hold that all of the essential elements of the crime were established beyond a reasonable doubt. The evidence of the prosecution is set forth in some detail earlier in the opinion. This evidence clearly established that there was a performance for hire, an exchange for value, and a manual stimulation of the genitals of another with the intent to arouse or gratify the sexual desires of the other. No evidence was presented on behalf of the defense. We find the

contention of the defendant that there was insufficient evidence to establish the crime of prostitution to be without merit.

The question of the sufficiency of the evidence to sustain the convictions on the charge of obstruction of official duty under K.S.A. 21-3808 presents a more serious issue. K.S.A. 21-3808 provides as follows:

"21-3808. **Obstructing legal process or official duty.** Obstructing legal process or official duty is knowingly and willfully obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty.

"Obstructing legal process or official duty in a case of felony is a class E felony. Obstructing legal process or official duty in a case of misdemeanor or a civil case is a class A misdemeanor."

The Judicial Council comment, which is published immediately following the statute, declares:

"**Judicial Council, 1968:** Obstructing justice was an indictable crime at common law. The historic scope of the crime is quite broad, including almost any act that would interfere with the efficient operation of the courts. The section, which follows the former law quite closely, prohibits conduct included in the common law concept of obstructing justice. The phrase 'obstruct, resist or oppose' is construed in *State v. Merrifield,* 180 Kan. 267 [303 P.2d 155 (1956)]."

K.S.A. 21-3808 is based upon the former criminal statutes, K.S.A. 21-717 and 21-718 (Corrick), which were originally enacted in 1868.

Before turning to the specific facts of this case, it would be helpful to consider in a broad sense the essential nature of the offense of obstructing legal process or official duty. In 3 Wharton's Criminal Law and Procedure § 1283 (1957), it is stated that the obstruction of or resistance to a public officer in the performance of his duties is an offense at common law and by statute in all jurisdictions. Some statutes employ the words "resist, obstruct, or oppose"; other statutes use the words "resist, obstruct, or abuse"; and still other statutes use the word "resist" standing alone. What constitutes the offense of obstructing or resisting an officer is not readily defined. The use of actual force in resisting an officer unquestionably constitutes the statutory offense of resisting an officer. However, the use of actual force is not always necessary to constitute the offense. There must, however, be some actual overt act of obstruction. As a general rule, the offense of resisting an officer can be committed without

the employment of actual violence or direct force, and without making threats. In some jurisdictions, by statute, either force or hostile demonstration is essential to constitute the offense. To obstruct means to interpose obstacles or impediments, to hinder, impede, or in any manner intrude or prevent. This term does not necessarily imply the employment of direct force or the exercise of direct means. Generally, mere threats to an officer, unaccompanied by force, do not constitute resistance, but there is clearly an unlawful obstruction of an officer if he is dissuaded from the performance of his duty by threats accompanied with a present ability and apparent intention to execute them. When threats are accompanied by the exercise of force so that an officer cannot do his duty, the execution of process is undoubtedly opposed or obstructed.

The leading Kansas case in the area of obstruction of official duty is *State v. Merrifield,* 180 Kan. 267, 303 P.2d 155 (1956). In *Merrifield,* it was held that, if one under arrest goes into a house, closes and latches the door, and refuses to go with the officer on request, without a further overt act, it is sufficient to support a conviction of obstructing, resisting or opposing the officer in the discharge of his official duty. The opinion in *Merrifield* provides some enlightenment on the type of resistance required before the criminal statute comes into play:

"The statute does not limit the offense to resistance alone. It includes also willful acts of obstruction or opposition, and to obstruct is to interpose obstacles or impediments, to hinder, impede or in any manner interrupt or prevent, and this term does not necessarily imply the employment of direct force, or the exercise of direct means. It includes any passive, indirect or circuitous impediments to the service or execution of process; such as hindering or preventing an officer by not opening a door. It may be stated as a general rule that under statutes containing the words 'obstruct, resist, or oppose,' or the single word 'resist,' the offense of resisting an officer can be committed without the employment of actual violence or direct force [citations omitted.]" pp. 270-71.

*Merrifield* was followed and approved in *State v. Goering,* 193 Kan. 307, 309-10, 392 P.2d 930 (1964).

In *State v. Jones,* 202 Kan. 31, 446 P.2d 851 (1968), it was held that the trial court did not err in refusing to discharge the defendant on a count charging willfully resisting and opposing an officer in the discharge of his official duty, where a police detective, who had reasonable grounds to believe that the defendant had committed two murders and a robbery, knocked on

the screen door at defendant's address. He identified himself as a police officer and said, "I would like to talk to you." Thereupon, the defendant reached for a gun. The detective saw his action and quickly jerked the gun away from the defendant's hand to keep the defendant from shooting him. The court held that the detective was acting within his official duty as a police officer and that he did not have to wait until the trigger was pulled before he acted.

A case involving our present statute K.S.A. 21-3808 is *State v. Hatfield,* 213 Kan. 832, 518 P.2d 389 (1974). In *Hatfield,* the sheriff and two county welfare workers proceeded to the home of the defendant Hatfield for the purpose of serving an order of protective custody upon the defendant's 14-year-old daughter. The sheriff knocked at the front door and two girls appeared and looked out through the glass. The defendant Hatfield, mother of one of the girls, soon arrived at the residence and inquired what the sheriff was doing there. The sheriff told the defendant that he would like to have her cooperation in making the daughter available for service of the order. The defendant did not assist in letting the sheriff into the house. The defendant simply did nothing. It did not affirmatively appear from the record that the locked door was the defendant's doing or that she could have opened the door. This court held, in an opinion by Justice Kaul, that by her failure to act the defendant did not knowingly or willfully obstruct the duty of the officer in attempting to serve legal process. The court cited *State v. Pruett,* 213 Kan. 41, 515 P.2d 1051 (1973), which held that obstructing legal process or official duty does not necessarily require the employment of direct force or the exercise of direct means.

K.S.A. 21-3808 was again construed in *State v. Gasser,* 223 Kan. 24, 574 P.2d 146 (1977), which held that a defendant, who runs from a federal officer assisting state law enforcement officials in an arrest for state theft charges, has obstructed the official duty of a law enforcement official as defined in K.S.A. 21-3808. It was further held that to sustain a conviction under K.S.A. 21-3808, proscribing obstructing official duty of a law enforcement official, it is necessary that the State prove the defendant had reasonable knowledge that the person he opposed was a law enforcement official.

The most recent case construing K.S.A. 21-3808 is *State v.*

*Latimer*, 9 Kan. App. 2d 728, 687 P.2d 648 (1984). In *Latimer*, a Pizza Hut employee reported to the police that someone had taken a pizza without paying for it. In response to the call, Detective Lane apprehended the defendant approximately 30 yards from the Pizza Hut. The officer asked the defendant his name. The defendant replied, giving a false name, "Kenneth Q. Lindsey." The officers then took time to run a driver's license check with the state motor vehicle department. The defendant refused to further identify himself even when confronted with the fact that the Kansas motor vehicle files revealed no driver's license issued to "Kenneth Q. Lindsey." Finally, the defendant admitted his true identity as "Steven Kent Latimer." One of the primary issues in the case was whether the scope of K.S.A. 21-3808 was broad enough to encompass oral statements as well as physical acts. The Court of Appeals emphasized the issue presented was not whether the defendant, *by his silence*, violated K.S.A. 21-3808. Rather the controlling issue on appeal was whether the defendant, by giving a false identification when asked his name by Officer Lane, violated K.S.A. 21-3808. The court cited cases from other jurisdictions and then reviewed the Kansas cases. The court noted the opinion in *State v. Merrifield*, 180 Kan. 267, and the judicial council comment under K.S.A. 21-3808, which are discussed above. The court then concluded as follows:

"Although 21-3808 has evidently been previously applied only to physical acts of a defendant, its scope is broad enough to encompass oral statements of a defendant as well. We find no reason to distinguish between physical acts and oral statements, since the apparent intent of the statute is to make criminal the willful obstruction by any means of an officer acting in the discharge of his official duty. As was stated in *Hudson v. State*, 135 Ga. App. [739] at 742, [218 S.E.2d 905 (1975)] about a Georgia statute:

'[T]he statute was made purposefully broad to cover actions which might not be otherwise unlawful, but which obstructed or hindered law enforcement officers in carrying out their duties. This does not, however, make any actions which incidentally hinder an officer a crime; the accused must have "knowingly and wilfully" obstructed or hindered the officer.'

"In the present case, since defendant knew his correct name was not Kenneth Q. Lindsey, his false statement was made intentionally. The question remains, however, whether defendant knowingly and willfully obstructed, resisted or opposed Officer Lane in the execution of his duty by giving that false identification. Generally, whether or not a defendant's actions would hinder or impede an officer in carrying out his assigned duties is a question of fact. See *Hudson*, 135 Ga. App. at 742.

"Although the record does not set forth in detail the precise manner in which defendant's falsification obstructed Officer Lane in the performance of his official duty, we find sufficient evidence to support the trial court's conclusion that such an obstruction did occur. When defendant Latimer falsely identified himself to Officer Lane, defendant was a criminal suspect who was carrying no identification. Defendant's false identity was given in response to a direct question by a police officer during the course of a criminal investigation. We find that under these circumstances, defendant's false identification impeded the course of the investigation and hindered Officer Lane in carrying out his duties in violation of K.S.A. 21-3808." 9 Kan. App. 2d 728, 733.

There is a comprehensive annotation contained in 44 A.L.R.3d 1018 on the subject of "What Constitutes Obstructing or Resisting an Officer, in the Absence of Actual Force." In the comment in that annotation, it is stated that, generally, under the various state statutes, resisting or obstructing an officer in the performance of his duty may be committed without the use of force or violence. Mere threats, however, are not sufficient to constitute the offense, although threats accompanied by some overt act or show of force have been held to be sufficient. In a number of cases it has been held or recognized that mere arguments or remonstrances, or even criticism of the officer, were not sufficient to constitute the offense. In other cases, the courts have held or recognized that arguments or remonstrances may become sufficient where their intensity, or the totality of several acts, was such as to amount to an interference with the officer. Profanity toward, or vilification of, an officer has been held not to constitute the offense unless, as indicated in some cases, the language used hindered or impeded the officer or made his job more difficult. Courts throughout the United States are often in disagreement where the factual circumstances are quite similar. It is clear that whether there has been an obstruction of official duty must depend upon the particular facts of each case then before the court for determination. There is, however, one requirement which seems to be emphasized in all of the cases—the action of the defendant charged with obstruction of official duty must have substantially hindered or increased the burden of the officer in carrying out his official duty.

With the above principles of law in mind, we turn to the facts in the case now before us to determine whether the evidence presented by the State was sufficient to sustain the convictions of obstruction of official duty under K.S.A. 21-3808. In order to convict either of the defendants in this case, the State was

required to prove that an identified law enforcement officer was carrying out some official duty, and that each defendant knowingly and willfully obstructed or opposed that officer in the performance of that duty. The State was also required to show that each defendant knew or should have known that the person he opposed was a law enforcement officer. *State v. Gasser*, 233 Kan. 24.

It is important to note in this case that, in each of the two complaints charging each defendant with the offense of obstruction of official duty, it is charged that the defendant did "unlawfully and willfully obstruct and oppose *Jack C. Metz, Shawnee County Sheriff's Deputy*, in the discharge of his official duty." The specific charge complained of in each complaint did not mention the investigator or detective Dixon, who were on the premises of the French Chalet and had conversations with both of the defendants prior to the arrival of detective Jack C. Metz. This is important, because in its brief the State relies in part upon the grinding of the marked $20 bills in the garbage disposal as one of the acts constituting obstruction of legal duty. The evidence in the case is undisputed that the attempted destruction of the marked money occurred immediately after defendant Parker was placed under arrest by the investigator and after she left the room heading in the direction of the kitchen. At that time the investigator heard the grinding of the garbage disposal.

The attempted destruction of the marked money occurred prior to the arrival of detective Jack C. Metz at the French Chalet. Obviously, the attempted destruction of the marked money could not be considered an act obstructing or opposing *Jack C. Metz* in the discharge of his official duty. Thus, in order to sustain a conviction in this case, the State must rely on the oral responses given by the defendants to the questions of Jack C. Metz after he appeared on the scene.

Here defendant Parker was under arrest for prostitution. Defendant Barzey, although not specifically placed under arrest, was in a position where he was being detained by the police officers. Both of the defendants had been given *Miranda* warnings advising them that they had a right to remain silent and that anything they would say could be used against them. According to the testimony of detective Metz, he asked each of them about a return of the money. Each gave the same answer, "I don't know

what money you are talking about." At the time the statements were made, detective Metz had advised each defendant that he would obtain possession of the money either by their voluntarily delivering the money to him or by obtaining a search warrant. Since the defendants did not voluntarily deliver the money to detective Metz, he obtained a search warrant and the marked bills were subsequently discovered in the garbage disposal.

The basic issue to be decided is whether the defendants committed the offense of obstruction of official duty under K.S.A. 21-3808, when in response to questions from detective Metz as to the whereabouts of the money each replied, "I don't know what money you are talking about." We have concluded that the evidence was not sufficient to prove the offense of obstruction of official duty under the statute. If the defendants had remained silent they could not have been charged with obstruction of official duty. They had a right to remain silent. The response of each defendant was essentially the equivalent of silence and did not substantially increase the burden placed upon detective Metz in carrying out his official duty. As he had contemplated, the officer obtained a search warrant, searched the premises, and found the marked bills.

The response of the defendants was made at a time when they were targets of an investigation. Defendant Parker had been arrested for prostitution. Both had been given the *Miranda* warning. Neither of the defendants was obligated to answer any questions asked by detective Metz. The response does not go beyond a simple denial of wrongdoing. Clearly each defendant's response did not increase the burden of the officer in performing his duty any more than their silence would have accomplished. Under all the circumstances, we hold that the evidence presented at the trial was not sufficient to sustain the convictions of obstruction of official duty under K.S.A. 21-3808.

For the reasons set forth above, the conviction of the defendant Parker on the charge of prostitution (K.S.A. 21-3512[c]) is upheld and the judgment of the trial court on that issue is affirmed. The judgment of the district court convicting each of the defendants of the crime of obstruction of official duty under K.S.A. 21-3808 is reversed and each of the defendants is discharged as to that charge.