No. 59,488

STATE OF KANSAS, *Appellee*, v. MALLONEE M. LEE, *Appellant.*

(744 P.2d 845)

Opinion filed October 30, 1987.

*Lucille Marino,* assistant appellate defender, argued the cause, and *Benjamin C. Wood,* chief appellate defender, and *Melissa Sheridan,* assistant appellate defender, were on the brief for appellant.

*Joseph E. Cosgrove, Jr.,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, *Dennis W. Moore,* district attorney, and *Paul J. Morrison,* assistant district attorney, were on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: Defendant Mallonee Lee was charged with second-degree murder and felonious obstruction of official duty. She

was convicted of involuntary manslaughter and obstructing offi-
cial duty. The Court of Appeals reversed the manslaughter
conviction for improper instructions and affirmed the obstruction
of official duty conviction. We granted defendant's petition for
review on the obstruction of official duty conviction.

On October 22, 1984, Mallonee was visiting with her friend,
Beverly Roland, in Roland's home. Mallonee had agreed to stay
overnight with Beverly because she was upset. Beverly's boy-
friend, Dennis Roby, had hit Beverly in the jaw that evening at a
club. After Roby was ejected from the club, Beverly confided in
Mallonee that Roby had held a gun to her head that morning in a
threatening manner.

The women were in the bathroom talking and preparing for
bed, with Mallonee leaning against the bathroom door. Suddenly
she felt the door being pushed open and heard a call for Beverly.
It was Roby. Mallonee held the door as best she could, trying to
keep Roby out of the bathroom. In spite of the struggle, Roby
pushed his way into the bathroom, brandishing a handgun.
Mallonee grabbed Roby's gun hand and they struggled. Mal-
lonee won the struggle, got the gun, and shot Roby five times,
killing him.

Beverly opened her eyes to see Mallonee standing over Roby
with a smoking gun. Beverly sent all of her children except one
over to their aunt's house to spare their viewing the body. Before
they left, the children heard Mallonee expressing concern about
her fingerprints on the gun and telling Beverly they should both
wash the gunpowder off their hands.

Tony, Beverly's oldest boy, refused to leave. He saw Mallonee
wrap the gun in her robe and put it in her bag. Mallonee then
took Tony with her to her car and left. She instructed Tony to tell
the police they had thrown the gun out the window and sug-
gested he might blame the killing on an old boyfriend of Bev-
erly's. When Mallonee arrived home she unwrapped the gun and
removed the five spent cartridges. The gun was not one Tony
recognized as Roby's. Mallonee asked Tony to call his aunt's
house and warn everyone not to mention her.

During the first interview, Tony's family complied with the
request and did not mention that Mallonee had been there.

That afternoon, some 12 hours after the shooting, Mallonee

and Tony went to the police station for questioning. They were interviewed separately. Tony said the gun had been thrown out of the car. The police spent that afternoon and the next day searching for the gun. Finally, Tony confessed his lie. Mallonee denied telling Tony to lie and had no memory of seeing or talking about the gun once Beverly removed it from her hand after the shooting. The gun was never found. The State claims the gun used in the killing belonged to Mallonee and, if found, would discredit her story of the events of the evening.

The only issue here is whether there was sufficient evidence of obstruction of official duty to convict Mallonee Lee.

K.S.A. 21-3808 provides:

"Obstructing legal process or official duty is knowingly and willfully obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty.

"Obstructing legal process or official duty in a case of felony is a class E felony."

Felony obstruction, under K.S.A. 21-3808, follows former K.S.A. 21-717 (Corrick) in all substantive respects. The Judicial Council Comment notes the "historic scope of the crime is quite broad." At common law, obstruction included *any* act which impeded justice. 67 C.J.S., Obstructing Justice § 2.

The statute is construed broadly in Kansas. We construed it in *State v. Merrifield,* 180 Kan. 267, 270, 303 P.2d 155 (1956):

"[T]o obstruct is to interpose obstacles or impediments, to hinder, impede or in any manner interrupt or prevent, and this term does not necessarly imply the employment of direct force, or the exercise of direct means."

*Merrifield* involved a defendant who, while under arrest and in custody of a person he knew to be a sheriff, went inside his house and refused to open the door. This action was held to be obstruction.

*State v. Logan,* 8 Kan. App. 2d 232, 233, 654 P.2d 492 (1982), *rev. denied* 232 Kan. 876 (1983), gave a broad interpretation of the scope of K.S.A. 21-3808. *Logan* upheld the conviction of a defendant who refused to stay in a police station when ordered to do so by an arresting officer on crutches. The court held the

defendant had violated the statute by his passive resistance in refusing to stay.

The defendant in *State v. Latimer,* 9 Kan. App. 2d 728, 733, 687 P.2d 648 (1984), gave a false name to officers. The court found mere words could constitute obstruction because "the apparent intent of the statute is to make criminal the willful obstruction by any means of an officer acting in the discharge of his official duty."

This court in *State v. Hatfield,* 213 Kan. 832, 835, 518 P.2d 389 (1974), however, held mere refusal to unlock a door (when there was no evidence the defendant had the ability to do so) was not enough to constitute obstruction. The opinion stressed the absence of "trickery or deceit on the part of defendant that in any way impeded the sheriff."

It is apparent the question of whether a defendant has obstructed official duty depends on the facts of each case. *State v. Parker,* 236 Kan. 353, 364, 690 P.2d 1353 (1984). In the present case, the Court of Appeals held there was sufficient evidence of three actions by Lee which substantially hindered Detective Lawson in his investigation. First, she left the scene and did not report to the police for 12 hours; second, she told Tony to lie about what happened to the gun; and third, she removed the gun, which was never recovered.

Lee argues mere failure to come forward cannot be construed as an act obstructing official duty, and to so hold would mean that in every case where a potentially criminal act is committed without an immediate journey to the police station, the defendant would be guilty of obstruction. She submits this is not what the legislature intended in enacting the statute.

State laws vary on whether mere flight from the scene of a crime constitutes obstruction of justice. See Annot., 44 A.L.R. 3d 1018, 1052-53. The authors' comments to § 21-3808 in Vernon's Kansas Code of Criminal Procedure state the statute forbids "every form of resistance or obstruction placed in the way of an officer in the performance of his official duty." Vernon's Kansas C. Crim. Proc. § 21-3808 (1971). The authors go on to say *Merrifield* seems to imply that flight would constitute resistance under Kansas law. The flight in *Merrifield,* however, occurred after the defendant was already under arrest and in custody.

All of the foregoing cases are distinguishable from this case.

Here, all of Mallonee Lee's actions complained of occurred prior to her having come under investigation or having been charged. At the time of Lee's actions, there was no officer whose official duty she could obstruct.

The complaint against Lee on obstructing official duty charged:

"That on or about the 22nd day of October, 1984 through the 31st day of October, 1984, in the County of Johnson, and State of Kansas, MALONEE M. LEE did then and there unlawfully, feloniously, willfully and knowingly obstruct a person authorized by law to serve process, to-wit: Detective Terry Lawson while the said Detective Terry Lawson was attempting to perform an official duty, to-wit: investigate the shooting and death of Dennis D. Roby, in violation of K.S.A. 21-3808 and K.S.A. 21-4501(e).

In order to convict Lee pursuant to K.S.A. 21-3808, the jury was instructed it must find:

"1. That Terry Lawson was authorized by law to serve legal process.

"2. That the defendant knowingly and willfully obstructed him in the investigation of the shooting and death of Dennis D. Roby which was an official duty of Terry Lawson.

"3. That the act of the defendant substantially hindered or increased the burden of the officer in the performance of the officer's duty.

"4. That at the time the defendant knew or should have known that Terry Lawson as a law enforcement office . . . ."

*State v. Gasser*, 223 Kan. 24, 30, 574 P.2d 146 (1977), states the defendant must have reasonable knowledge he is opposing a police officer. In *State v. Parker*, 236 Kan. 353, we emphasized the obstruction must be directed against the officer named in the complaint.

In *Parker*, Detective Metz waited outside for an investigator's signal to move inside after he arrested a suspected prostitute. When the investigator placed the defendant under arrest, she ran to another room and put marked bills down the disposal. The defendant was charged with obstructing *Detective Metz* in the performance of his official duty under K.S.A. 21-3808. The court found it could not consider the actions of the defendant prior to the arrival of Detective Metz.

*Parker* holds K.S.A. 21-3808 is intended to deter the obstruction of a specific officer, rather than that of justice generally. It holds the State is required to prove an identified officer was discharging his duty, and defendant knowingly and willfully

obstructed "that officer in the performance of that duty." 236 Kan. at 365.

In *Parker,* when Detective Metz came inside and questioned the defendant about the missing evidence, she replied "I don't know what money you are talking about." This is similar to Lee's reply to Detective Lawson that she didn't know what happened to the gun. The court in *Parker* held the defendant's response to be the equivalence of silence, which was her right to claim. It also noted silence does not "substantially increase the burden" on the officer, and held defendant's actions, to constitute obstruction, must *substantially* hinder the officer. 236 Kan. at 365-66.

We hold there is no evidence Mallonee Lee obstructed the official duty of Detective Terry Lawson.

The judgments of the trial court and the Court of Appeals are reversed on the issue of obstruction of official duty and this case is remanded for a new trial on involuntary manslaughter.