NOT DESIGNATED FOR PUBLICATION

No. 112,467

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTINE ANDERSON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Pottawatomie District Court; STEVEN M. ROTH, judge. Opinion filed November 13, 2015. Affirmed.

*Jack E. Turner*, of Baldock & Turner, LLP, of Alma, for appellant.

*Jason B. Oxford*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before MALONE, C.J., BRUNS, J., and ROBERT W. FAIRCHILD, District Judge, assigned.


*Per Curiam*: Christine Anderson appeals her conviction of interference with law enforcement. On appeal, she argues that there was insufficient evidence for the district court to find that she substantially hindered a uniformed sheriff's deputy in the discharge of his official duties. Based on our review of the record, we find that there is sufficient evidence—when viewed in the light most favorable to the prosecution—to support Anderson's conviction for interference with a law enforcement officer beyond a reasonable doubt. Thus, we affirm Anderson's conviction.

FACTS

On the morning of May 6, 2014, Deputy Justin Young of the Pottawatomie County Sheriff's Office responded to a call from Cleo Croutch regarding an unknown individual who was wandering his property. When Deputy Young arrived, he was dressed in uniform with a badge, sidearm, taser, pepper spray, baton, flashlight, radio, and handcuffs clearly visible. Moreover, patches on the shoulder of his uniform indicated that he was a member of the Pottawatomie County Sherriff's Office.

Deputy Young initially met with Croutch, who told him that a female—who was later identified as Anderson—had been roaming between houses and outbuildings in the area. Deputy Young then spoke to Croutch's neighbor, Lyle McCarter, who stated that he had recently returned home and found the same woman wandering around his property. After speaking to Croutch and McCarter, Deputy Young approached Anderson. He identified himself as a deputy with the Pottawatomie County Sheriff's Office and asked her why she was on the property. Although Anderson stated that she was there to see Lyle, McCarter denied ever seeing her before.

When Deputy Young asked Anderson for her identification, she stated that she did not have any. Further, when he asked for her name, she initially responded, "That's a good question." After Deputy Young asked several times, Anderson eventually told him that her first name was Christine. Nevertheless, when Deputy Young asked her for her last name, she again replied, "That's a good question." After the deputy persisted, she initially told him that her last name was Bass but later admitted that her last name was actually Anderson.

During Deputy Young's conversation with Anderson, he noticed that she was stumbling around and that she seemed to be "all over the place." Anderson petted and talked to nearby goats when the deputy tried to communicate with Anderson.

2

Accordingly, Deputy Young suspected that Anderson may be under the influence of some substance.

At one point before Deputy Young had learned Anderson's correct last name, she told him that she wanted a drink from a gallon of milk sitting in the front seat of her Ford Ranger, which was parked nearby. Because he had not yet been able to determine whether there were weapons in the truck and was worried that Anderson might try to drive away, Deputy Young told her not to get into the truck.

According to Deputy Young, Anderson then became "loud and kind of resistive" and kept insisting that she wanted to drink the milk because she was thirsty. She eventually turned around, stuck out her rear end, and backed towards the deputy, attempting to push him out of the way so she could get to the truck. Anderson continued to do this even after Deputy Young told her to stop. Instead of stopping, Anderson persisted—moving from the passenger-side door, around the rear of the truck, and ultimately to the driver-side door. Throughout, the deputy used his arm to keep space between himself and Anderson.

Anderson eventually agreed to stop, and Deputy Young had her sit down so he could continue to question her. It was at that point she admitted her last name was Anderson. The deputy then relayed this information to a dispatcher, who informed him that she had a valid driver's license and no outstanding warrants for her arrest. Because Deputy Young did not believe Anderson was capable of driving safely, he asked her for the address of the place she was staying. Once again, she responded, "That's a good question." And when he offered to take her somewhere, Anderson asked him if he would take her to Oklahoma. At some point during this discussion, Deputy Young checked the front seat of the truck for weapons, and because he found none, he allowed Anderson to retrieve her milk.

While the deputy was speaking with his supervisor, Anderson began to pull weeds from the ground. Anderson eventually began walking towards one of the homes in the area, and Deputy Young asked her to come back so they could agree on a place that he could take her. Anderson then looked over her shoulder and back-pedaled toward the deputy in the same manner as before. Although Deputy Young tried to maneuver out of her path, Anderson made physical contact with him.

At this point, Deputy Young grabbed Anderson's wrists to place her in handcuffs. But she pulled away, raised her hands, and screamed "no." The deputy then grabbed Anderson around the waist and took her to the ground. Once on the ground, Anderson continued to try to pull her hands free, but Deputy Young was eventually able to place her in handcuffs. Shortly thereafter, the deputy noticed that Anderson had injured her right eye, so he called dispatch to request EMS. Approximately 24 minutes elapsed from when Deputy Young arrived on the scene until he placed Anderson in handcuffs.

While waiting for EMS to arrive, Deputy Young asked Anderson to help him as he tried to lift her off the ground, but she refused. Instead, she remained on the ground crying and screaming. Because Anderson refused to get off of the ground, the deputy let her lie there until EMS arrived. At some point while she was on the ground, Deputy Young tried to ask her additional questions, but she closed her eyes and held her breath.

When EMS arrived, Anderson refused to answer any questions. In addition, Deputy Young had to physically restrain Anderson's legs as EMS attempted to determine the nature and extent of her injuries. At the request of EMS, Deputy Young rode along in the ambulance in case Anderson became violent once again. After Anderson was treated and released from the hospital around 1 p.m. later that day, Deputy Young placed her under arrest for battery of a law enforcement officer and interference with law enforcement.

4

On May 12, 2014, the State officially charged Anderson with one count of interference with law enforcement, a class A nonperson misdemeanor. The next day, she pled not guilty, and the district court held a bench trial on August 22, 2014. During trial, Deputy Young testified for the State. Anderson did not testify nor did she call any witnesses. The district court ultimately found Anderson guilty and sentenced her to serve 12 months' probation with an underlying 90-day prison sentence.

ANALYSIS

On appeal, Anderson challenges the sufficiency of the evidence to support her conviction. When a defendant challenges the sufficiency of the evidence, we review all the evidence in the light most favorable to the prosecution and must be convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. In making such a determination, we generally will not reweigh the evidence or the credibility of witnesses. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014). It is only in rare cases where the testimony is so incredible that no reasonable fact finder could find guilt beyond a reasonable doubt that we will reverse a guilty verdict. See *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

K.S.A. 2013 Supp. 21-5904(a)(3) defines interference with law enforcement as "knowingly obstructing, resisting or opposing any person authorized by law to serve process . . . in the discharge of any official duty." Whether a defendant is guilty of interference with law enforcement depends on the facts of each case. The State must show that the defendant (1) knowingly obstructed or opposed, (2) an identified law enforcement officer, (3) carrying out an official duty, (4) to the extent that the defendant's actions substantially hindered or increased the burden of the officer in carrying out his or her duties. *State v. Parker*, 236 Kan. 353, Syl. ¶ 5, 690 P.2d 1353 (1984); *State v. Pacelli*, No. 111,292, 2015 WL 3869744, at *2 (Kan. App. 2015) (unpublished opinion), *pet. for rev. filed* July 7, 2015; PIK Crim. 4th 59.040 (2014 Supp.). Interference with law

enforcement only encompasses a defendant's intent to obstruct the official duties of a specific officer, rather than that of justice in general. *State v. Lee*, 242 Kan. 38, 42, 744 P.2d 845 (1987).

Anderson's only argument on appeal is that her actions did not substantially hinder Deputy Young's attempts to carry out his duties. In making her argument, Anderson disagrees with the district court's conclusion that the second occurrence of her "butt bumping" substantially hindered the deputy in his attempt to remove her from the property. Our Supreme Court has stated that "[t]he use of actual force in resisting an officer unquestionably constitutes the statutory offense of resisting an officer." *State v. Parker*, 236 Kan. 353, 360, 690 P.2d 1353 (1984). A reasonable person could conclude from the evidence that Anderson used physical force on several occasions to resist Deputy Young by backing into him with her rear end.

Although Anderson characterizes her actions as simply "wiggling her posterior towards the officer," the record does not support such a conclusion. The fact that she resisted in such an unconventional manner or that it does not appear as harmful as other means of physical resistance does not obviate the fact that she used physical force to do so. Furthermore, it is not our role to reweigh the evidence or to determine the credibility of the testimony presented at trial.

The record also indicates that when Deputy Young grabbed Anderson's wrists to place her in handcuffs, she pulled away, raised her hands, and screamed "no." The deputy's testimony also established that Anderson continued to try to pull her hands free while he was attempting to place her in handcuffs. An individual may not use force to resist an arrest by a known law enforcement officer, even if the person believes that the arrest is unlawful. K.S.A. 2013 Supp. 21-5229; *City of Wichita v. Cook*, 32 Kan. App. 2d 798, 805, 89 P.3d 934, *rev. denied* 278 Kan. 843 (2004) (upholding conviction for interference with law enforcement where defendant jerked and pulled away from an

6

officer whom was attempting to place him in handcuffs). We, therefore, are convinced that a rational factfinder could have found Anderson guilty beyond a reasonable doubt.

Affirmed.