NOT DESIGNATED FOR PUBLICATION

No. 114,206

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WARDELL ETIER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed July 1, 2016. Affirmed.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*Todd Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., PIERRON and ATCHESON, JJ.

*Per Curiam*:  Wardell Etier appeals his conviction of interference with law enforcement, claiming the State failed to present sufficient evidence. Etier does not challenge his conviction for violation of a protective order but does challenge the district court's use of his criminal history score in determining his sentence. Because the evidence when viewed in the light most favorable to the State was sufficient for the jury to find Etier guilty and because the district court did not err in sentencing him, we affirm Etier's convictions and sentences.

FACTUAL AND PROCEDURAL BACKGROUND

At the preliminary hearing, Brandy Stroble, the mother of Etier's children, testified that in June 2013, she and Etier got into argument at her apartment in Leavenworth County, Kansas. Stroble claimed that Etier grabbed her by her arm, hair, and neck and that at one point he had a knife. Etier also allegedly threatened to kill Stroble and her children. Stroble's mother called the police, but no one was arrested. Stroble subsequently obtained a protection from abuse order. Based on this incident the State eventually charged Etier with aggravated assault, criminal threat, criminal restraint, and domestic battery.

Stroble also testified that in July 2013, after the protection from abuse order was in effect, Etier came back to her apartment. Stroble's roommate let Etier in and, after sitting in a chair in Stroble's bedroom, Etier allegedly began hitting Stroble in the face, striking her three or four times. Stroble, her children, her roommate, Etier, and two other people all went to the hospital. According to Stroble, on the way to the hospital Etier said he was sorry and Stroble told him that she would not say anything to the hospital staff. At the hospital, x-rays showed one side of Stroble's jaw was shattered and the other side had a clean break. Stroble's injuries required surgery and resulted in her jaw being wired shut for 7 weeks.

Officer Leona Housell of the Leavenworth Police Department was dispatched to the hospital to investigate. Housell learned from hospital security that Stroble's assailant was suspected of being somewhere nearby and was provided a description of the suspect, but Housell was unable to locate the person. While in the hospital, Housell spoke with Stroble, who reported that the father of her children had beaten her. Housell also spoke with Stroble's roommate, and during this conversation the roommate's cellphone rang. The roommate indicated to Housell that Etier was on the line, prompting her to put the call on speakerphone. Housell heard Etier say that he was sorry and that he could not get

2

arrested. Stroble's roommate told Etier to go to Stroble's apartment and wait on the back porch.

Housell, after finishing with Stroble's roommate, headed toward Stroble's apartment. On the way, Housell noticed a man matching Etier's description, so she drove around the block and parked. Housell approached the man matching Etier's description and said, "Wardell, get on the ground." The man said he was not Wardell. As Housell repeated her command to get on the ground, the man took off running. Housell gave chase and tried to tase the man, yelling "taser." The man used a plastic bag he was carrying, filled with unknown items, to block the taser. As she chased the man, Housell lost sight of him, slowing to check areas where she thought he might be hiding. Housell eventually heard another police officer who had responded to Housell's radio call commanding the man to stop and get on the ground. When Housell arrived at the scene, she saw the man facing the other police officer. Housell ordered the man to get on the ground, but he tried to run again. The other officer tased the man, ending the chase.

At trial, Housell identified the man as Etier. She also testified that when she initially approached Etier and during the chase she was in uniform. As a result of fleeing from the police and allegedly beating Stroble, Etier was charged with aggravated battery, a severity level 4 person felony or, in the alternative, aggravated battery, a severity level 7 person felony; aggravated burglary; interference with law enforcement; violation of a protective order; intimidation of a witness; and criminal restraint.

Stroble did not show up for trial, requiring the State to read Stroble's testimony from the preliminary hearing to the jury. Etier denied beating Stroble but admitted that he had violated the protection from abuse order. Etier also testified that although he noticed Housell wearing a uniform, he could not tell who she was. Initially, Etier said he only heard Housell say his name but then later testified that he heard her say, "Wardell, get on the ground." He admitted that he lied when he said he was not Wardell, claiming that he

3

saw someone coming around a corner with a gun or taser and that he knew he was not supposed to be in Leavenworth. Etier also admitted that he ran from Housell and claimed that it was not until he ran that he realized Housell was a law enforcement officer. Etier denied hearing Housell yell "taser" and denied that he tried to run again after being stopped by the other officer.

The jury found Etier guilty on only two counts, interference with law enforcement and violation of a protective order. The district court determined that Etier had a criminal history score of A and sentenced him to consecutive sentences of 16 months in prison for interference with law enforcement and 6 months in the county jail for violation of a protective order.

Etier timely appeals.

### DID THE STATE PRESENT SUFFICIENT EVIDENCE TO SUPPORT ETIER'S CONVICTION OF INTERFERENCE WITH LAW ENFORCEMENT?

Etier first claims that his conviction of interference with law enforcement was not supported by sufficient evidence because the State failed to present any evidence that he knew or should have known Housell was a law enforcement officer when he ran from her. Specifically, Etier argues that the evidence the State presented was insufficient because Housell's car was parked out of view; she did not identify herself as a police officer; and Etier saw a gun, heard his name, and ran.

When the sufficiency of evidence is challenged in a criminal case, we review "all the evidence in a light most favorable to the prosecution [and] must be convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014). We generally will not reweigh the evidence or the credibility of witnesses. 299 Kan. at 525. Only in rare cases

4

where the testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

The State charged Etier with violating K.S.A. 2011 Supp. 21-5904(a)(2) by running from Housell. For a jury to find a defendant guilty of interference with law enforcement, the prosecution must prove (1) the person obstructed was discharging an official duty; (2) the defendant knowingly obstructed that person in performing that duty; (3) the defendant knew or should have known that the person he or she obstructed was a law enforcement officer; and (4) the defendant's actions substantially hindered or increased the burden of the officer performing his or her official duty. See K.S.A. 2011 Supp. 21-5904(a)(2); *State v. Parker*, 236 Kan. 353, 364-65, 690 P.2d 1353 (1984). Direct or circumstantial evidence and logical inferences arising from that evidence may establish a defendant's knowledge and intent. See *State v. Gholston*, 272 Kan. 601, 605, 35 P.3d 868 (2001), *cert. denied* 536 U.S. 963 (2002).

Here, Housell testified that while in uniform she approached Etier, called his name, and told him to get on the ground. Etier said he was not Wardell. Then he ran. After Housell tried to tase Etier, he should have realized that she was a law enforcement officer. Significantly, Etier admitted at trial that Housell was in uniform but claimed that he could not tell what she was, but then he also admitted he knew Housell was a law enforcement officer when he ran and yet he did not stop. In fact, he agreed that he ran for some distance until he was stopped by the other officer. Based on this evidence, we have no trouble concluding a rational factfinder could have found him guilty beyond a reasonable doubt of interference with a law enforcement officer.

## DID THE DISTRICT COURT ERR BY USING ETIER'S CRIMINAL HISTORY SCORE IN DETERMINING HIS SENTENCE?

Etier also claims that the use of his criminal history to calculate his guidelines sentence was unconstitutional since those past convictions were not proved in this case to a jury. See *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Our Supreme Court, however, has rejected this argument on more than one occasion, and we reject it as well. See *State v. Baker*, 297 Kan. 482, 485, 301 P.3d 706 (2013); *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002).

Affirmed.