(256 P.3d 890)
No. 102,720

STATE OF KANSAS, *Appellee*, v. ARVIND EVEREST, *Appellant*.

Opinion filed May 13, 2011.

*Jonathan Laurans*, of Kansas City, Missouri, for appellant.

*Steven J. Obermeier,* assistant district attorney, *Stephen M. Howe,* district attorney, and *Steve Six,* attorney general, for appellee.

Before STANDRIDGE, P.J., MCANANY, J., and KNUDSON, S.J.

MCANANY, J.: Arvind Everest was convicted of driving under the influence of alcohol (DUI), driving while suspended, and felony obstruction of official duty. This was Everest's fifth DUI conviction. He appeals his current DUI conviction and his conviction for felony obstruction of official duty. We affirm Everest's DUI conviction but reverse his conviction for felony obstruction of official duty.

Officer Jonathan Rankin stopped Everest's vehicle late at night for not having a properly illuminated license tag. The stop, Everest's arrest, and the subsequent events at the police station were preserved on video.

At the scene of the traffic stop Everest lied to Rankin about his identity when asked. Everest had no driver's license. He exhibited bloodshot and watery eyes and smelled of alcohol. Everest denied having anything to drink. Rankin contacted dispatch to search for police records of the person Everest claimed to be. Dispatch reported no record of any such person.

Rankin then returned to Everest who was still in his vehicle. Everest was unsteady on his feet when he exited his vehicle. He failed all but one of the field sobriety tests he was given. Rankin arrested Everest for DUI and then searched Everest's car, where he found an identification card showing Everest's true name and date of birth. When confronted, Everest initially denied his true identity but eventually admitted who he was.

At the police station Rankin attempted to give Everest an Intoxilyzer breath test, but the test could not be performed because Everest provided an insufficient breath sample. Though Everest claimed this was because he was having an asthma attack, a paramedic observed no wheezing or other signs of asthma and noted that Everest's lung sounds were normal and his oxygen saturation level was an adequate 98 percent. The paramedic did note, however, the odor of alcohol on Everest's breath and his "glossy" eyes.

When taken to the hospital Everest refused to submit to a blood-alcohol test.

The day before trial Everest's counsel was provided a copy of the DVD of events at the scene and at the police station. When the State offered the DVD into evidence, Everest's counsel responded:

"As long as this is a redacted DVD, I have no objection. However, if it is not redacted or if during the redacting process inadmissible material can still be heard or seen, I have a continuing objection to that.

"And if that occurs, I will more than likely move for a mistrial. I just want the record to be clear on that."

The State responded:

"It's a redacted copy. It's an exact copy of what I provided to [defense counsel] yesterday. And he has had an opportunity to review this same copy—version of this copy. I don't believe there is anything on there that's improper."

The DVD was admitted into evidence but it was only played for the jury from the beginning to the 1:48 mark. Everest lodged no objection to the DVD during or after its showing. The jury convicted Everest, and he now appeals.

*Credibility Testimony*

Everest claims, for the first time on appeal, that the district court erred in failing to *sua sponte* declare a mistrial on the grounds that Rankin's observations in the recording about Everest's credibility violated the principle expressed in *State v. Elnicki*, 279 Kan. 47, Syl. ¶ 3, 105 P.3d 1222 (2005) (improper to admit the testimony of one witness expressing an opinion on the credibility of another witness).

Everest concedes in oral argument that Rankin's statements prior to the 1:48 mark on the DVD do not warrant a mistrial under *Elnicki*. Everest's theory is that the DVD was sent back to the jury room with the other exhibits during the jury's deliberations and the jury must have viewed the balance of the DVD which contained the statements from Rankin that warranted a mistrial.

There are two problems with this theory. First, it is premised upon pure speculation. There is nothing in the record to support the claim that the jury ever viewed the balance of the DVD after

the 1:48 mark. We do not know whether a DVD player was available in the jury room. We have no record of the jurors asking for one.

Second, Everest raised no objection to admission of the DVD. The contemporaneous objection rule applies to alleged *Elnicki* violations. See *State v. Anthony*, 282 Kan. 201, 213-14, 145 P.3d 1 (2006). Everest never moved the court for a mistrial based upon the DVD having been shown to the jury. Further, the issue was not raised in Everest's motion for new trial. There is nothing to indicate whether the district judge was ever made aware of what the DVD contained after the 1:48 mark when the jury's viewing of it during the trial ended.

Everest relies on cases prior to *State v. King*, 288 Kan. 333, 204 P.3d 585 (2009), to support our considering this issue notwithstanding his failure to assert a contemporaneous objection. However, in *King* the court made clear:

"[E]videntiary errors shall not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error at trial. . . .

". . . From today forward, in accordance with the plain language of K.S.A. 60-404, evidentiary claims—including questions posed by a prosecutor and responses to those questions during trial—must be preserved by way of a contemporaneous objection for those claims to be reviewed on appeal." 288 Kan. at 349.

See also *State v. Dukes*, 290 Kan. 485, 487-88, 231 P.3d 558 (2010) (court has consistently been refusing to review evidentiary issues without contemporaneous objections even if the issue involves a fundamental right). The trial court "must be provided the specific objection so it may consider as fully as possible whether the evidence should be admitted and therefore reduce the chances of reversible error." *State v. Richmond*, 289 Kan. 419, 429, 212 P.3d 165 (2009).

The more recent decision in *State v. Becker*, 290 Kan. 842, 235 P.3d 424 (2010), does not support Everest's claim to an exception to the contemporaneous objection rule. Unlike in *Becker*, the record here does not disclose that Everest's counsel was "duped" into not objecting to admission of claimed objectionable testimony. Here, Everest's counsel had the opportunity to view the video in advance of trial and raise any objection to its contents. No objection

was raised. Everest's *Elnicki* claim has not been preserved for appeal.

### Sufficiency of DUI Evidence

Next, Everest argues there was insufficient evidence to support his conviction of felony DUI based upon him being under the influence of alcohol to a degree that rendered him incapable of driving safely.

In considering this claim we examine the evidence in the light more favoring the State to determine if a rational factfinder could have found Everest guilty beyond a reasonable doubt. See *State v. Trautloff*, 289 Kan. 793, 800, 217 P.3d 15 (2009). In doing so we do not reweigh the evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. *State v. Hayden*, 281 Kan. 112, 132, 130 P.3d 24 (2006). Further, the defendant's guilt can be based entirely upon circumstantial evidence and the reasonable inferences drawn from such evidence. See *State v. Scaife*, 286 Kan. 614, 618-19, 186 P.3d 755 (2008).

Everest claims that the State presented no evidence that he was driving in an erratic manner. However, "[e]vidence of incapacity to drive safely can be established through sobriety tests and other means. Observed erratic driving is not a requirement for conviction of driving while under the influence of alcohol." *State v. Blair*, 26 Kan. App. 2d 7, Syl. ¶ 2, 974 P.2d 121 (1999).

Everest smelled of alcohol when stopped. His eyes were bloodshot and watery. He had difficulty finding his identification and proof of insurance. He was unable to successfully recite the alphabet. He failed the officer's numbers test. He swayed while the officer checked his eyes. He failed the walk-and-turn test and the one-leg stand test. He provided an insufficient breath sample for testing. This was evidence the jury could consider in determining whether Everest was inebriated. K.S.A. 2006 Supp. 8-1001(i); *State v. Wahweotten*, 36 Kan. App. 2d 568, 591, 143 P.3d 58 (2006), *rev. denied* 283 Kan. 933 (2007). A paramedic noted that Everest smelled of alcohol and had glossy eyes. The cumulative effect of all this evidence was to provide ample support for the jury's finding that Everest was under the influence of alcohol to a degree that

rendered him incapable of safely driving. Accordingly, we affirm Everest's DUI conviction.

*Sufficiency of Obstruction of Official Duty Evidence*

Next, Everest argues that the evidence was insufficient to support his conviction of obstruction of official duty. This conviction was based on the fact that Everest gave Rankin a false first name and date of birth. Everest claims that his actions did not substantially hinder Officer Rankin or increase Rankin's burden in carrying out his official duty. We review the evidence in the same manner as we reviewed the DUI evidence against Everest.

K.S.A. 21-3808(a) defines obstructing official duty as "knowingly and intentionally obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty."

Whether a defendant obstructed official duty depends on the facts of each case. To sustain a conviction the State must prove: (1) the person obstructed was an identified law enforcement officer carrying out an official duty; (2) the defendant knowingly and willingly obstructed or opposed that officer in the performance of that duty; (3) the defendant knew or should have known the person he or she opposed was a law enforcement officer; and (4) the defendant's action substantially hindered or increased the burden of the officer in carrying out his or her official duty. See K.S.A. 21-3808(a); *State v. Parker*, 236 Kan. 353, 364-65, 690 P.2d 1353 (1984). See also Pattern Instruction for Kansas (PIK) Crim. 3d 60.09. The jury was given an instruction consistent with these elements.

Kansas courts have held that the act of providing false identification during the course of a criminal investigation can result in obstruction of official duty. See *State v. Latimer*, 9 Kan. App. 2d 728, 687 P.2d 648 (1984). In this appeal, however, Everest challenges whether his act of providing false identifying information to Rankin substantially hindered or increased the burden of Rankin in carrying out his official duty.

K.S.A. 21-3808 does not contain the statutory element that the act of the defendant substantially hindered or increased the burden of the officer in the performance of the officer's official duty. However, in *Parker* our Supreme Court declared: "In order for a defendant to be found guilty of obstruction of official duty under K.S.A. 21-3808, it must be shown that the act of the defendant substantially hindered or increased the burden of the officer in carrying out his official duty." 236 Kan. 353, Syl. ¶ 5.

After *Parker*, Kansas courts have consistently required the State to prove the additional element that the act of the defendant substantially hindered or increased the burden of the officer in the performance of the officer's official duty. See, *e.g.*, *State v. Lee*, 242 Kan. 38, 43, 744 P.2d 845 (1987); *State v. Frazier*, 12 Kan. App. 2d 164, 168, 736 P.2d 956 (1987); *State v. McCoy*, No. 101,149, unpublished opinion filed July 23, 2010, *rev. denied* 291 Kan. 916 (2010); *State v. Robinson-Bey*, No. 98,614, unpublished opinion filed August 22, 2008.

Everest argues that his act of providing a false name to Rankin did nothing to impede Rankin's investigation of the defective license tag or the DUI. Rankin testified that Everest's false first name did not hinder his ability to administer the field sobriety tests "[b]esides the time delay." Only about 3 minutes passed while Rankin took the false information from Everest, checked with dispatch, and returned to Everest's vehicle to continue the DUI investigation. Following the completion of that investigation, which was not dependent upon knowing Everest's true identity, Rankin arrested Everest for DUI and then searched Everest's car and found an identification card showing Everest's true name and date of birth.

In *State v. Payne*, No. 102,337, unpublished opinion filed November 5, 2010, *rev. denied* 291 Kan. 917 (2011), the defendant gave a false name at the time of his arrest. When the jail staff processed and fingerprinted Payne, his true name was discovered. As a result of the false identification, the officer had to rewrite his arrest reports. A panel of this court held that the officer's act of rewriting his reports satisfied the requirement of substantially hindering or increasing the burden on the officer.

Here, however, we find no substantial evidence that Everest substantially hindered or increased Rankin's burden in carrying out his investigation. Although Everest's act of falsely identifying himself is the same act that led to convictions in *Latimer* and *Payne*, Everest's true identity was quickly established when Rankin discovered Everest's identification cards, which was before Everest's misidentification caused any substantial burden to Rankin.

We are duty bound to follow *Parker*, absent some indication the court is departing from it. See *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007). There is no indication that our Supreme Court is departing from its holding in *Parker*. We find no evidence to support the necessary element that Everest's actions substantially hindered Rankin or increased Rankin's burden in carrying out his official duty of investigating Everest for DUI and for not having a properly illuminated license tag. Accordingly, we reverse this conviction.

Everest raises additional issues regarding the classification of the obstruction charge as a felony and regarding a jury instruction that related solely to the obstruction charge. Because we are reversing Everest's obstruction conviction, these remaining issues are now moot.

Affirmed in part and reversed in part.