NOT DESIGNATED FOR PUBLICATION

No. 117,353

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GREGORY JOSEPH ZERR,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; BRENDA M. CAMERON, judge. Opinion filed March 30, 2018. Affirmed.

*Thomas J. Bath, Jr.*, of Bath & Edmonds, P.A., of Overland Park, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., STANDRIDGE and BRUNS, JJ.

PER CURIAM: A jury convicted Gregory Zerr of one count of leaving the scene of an accident that resulted in injury or death, two counts of contributing to a minor's misconduct, and one count of interference with a law enforcement officer discharging an official duty. On appeal, Zerr contends that the State offered insufficient evidence to convict him. He further asserts that the charging document ultimately filed by the State inadequately informed him of the charges. We conclude that there was sufficient evidence presented at trial upon which a jury could convict Zerr beyond a reasonable

1

doubt. In addition, we do not find that the charging document violated Zerr's rights. Thus, we affirm.

FACTS

On November 7, 2015, Zerr and his minor son, C.Z., left their home near 159th street and Roe Avenue in Johnson County to go set up a hunting ground, and possibly hunt that evening, at a friend's farm near Gardner. While Zerr was driving his pickup truck westbound at the intersection of 175th street and Pflumm around 3 p.m. a car travelling eastbound on the same street at a high rate of speed struck another car from behind. As a result, the car that was struck from behind was pushed into the westbound lane and hit Zerr's pickup truck. It is undisputed that Zerr was driving with a suspended license at the time of the accident. However, there is no allegation by the State that Zerr caused or contributed to the accident.

After the impact, Zerr's pickup truck went into a nearby ditch, rolled over, and came to rest on to its roof. The family members who were in the car that had been pushed into the path of Zerr's pickup truck—two adults and their minor children—all received significant injuries as a result of the accident. In particular, the injuries suffered by the minor children were particularly serious. Unfortunately, one of the children—a 17-month-old girl—died from her injuries several hours later at Children's Mercy Hospital. The other child—an 8-year-old boy—is blind in one eye as a result of the injuries he suffered in the accident.

Once his pickup came to a stop, Zerr evidently helped his son to unbuckle his seat belt. While bystanders assisted his son in getting out of the truck, Zerr searched for his cell phone. According to C.Z., he saw a little girl lying on the street with people crying over her. Zerr found his cellphone but he did not use it to call 911. Likewise, Zerr did not assist anyone injured in the accident—other than perhaps his son—and he did not

exchange information with the other drivers. Moreover, Zerr did not stay at the scene of the accident to speak to law enforcement officers or to have his son—who had evidently had some trouble breathing after the accident—examined by first responders.

Instead, Zerr left his pickup truck at the scene of the accident and got a stranger, who had stopped near the scene of the accident, to give him and his son a ride home. During the ride home, Zerr used his cellphone to call his wife, Alissa, and asked her to meet him at home. At the time she received the call, Alissa and Zerr's minor daughter, J.Z., were at a restaurant with two of Alissa's friends. When she got home, Alissa—who evidently is or was a licensed nurse in Oklahoma—looked at C.Z. and felt that he did not need to go to the hospital. Likewise, it does not appear from the record that Zerr was injured in the accident.

Shortly after the accident, law enforcement officers were able to determine that Zerr was the owner of the pickup truck abandoned at the scene of the accident. Accordingly, Deputy Greg Smith of the Johnson County Sheriff's Department went to Zerr's house to investigate. At the time, Deputy Smith was attempting to determine who had left the scene of the accident. Although the 17-month-old child had not yet died at the time Deputy Smith initially spoke to Zerr and his wife, he believed that the accident would likely result in her death based on his observations at the scene. At trial, Deputy Smith would testify that he personally observed both children at the accident scene. Based on his experience as a law enforcement officer, he did not believe the little girl would survive her injuries.

When speaking with Deputy Smith, Alissa lied and told him that she had been the one driving the pickup truck at the time of the accident. Moreover, Zerr told the deputy the same story. After Deputy Smith left the house, Zerr told his children that they should also lie about the events surrounding the accident if law enforcement officers questioned them. In particular, Zerr told C.Z. to say that Alissa was driving the pickup truck, that

3

Zerr was riding in the front passenger seat, and that C.Z. was riding in the back seat at the time of the accident. Furthermore, Zerr told J.Z. to say that she was at home watching videos at the time of the accident.

A few hours after the accident Officer Joshua Taylor, of the Overland Park Police Department and another officer visited the Zerr residence. The officers interviewed C.Z., who reported no significant injuries as a result of the accident. The officers then spoke with Zerr who again told them that Alissa had been driving the pickup truck at the time of the accident. Apparently, Alissa was not available at the time to speak with the officers and they left a form for her to fill out. Shortly thereafter Alissa filled out the form and again stated that she was the one who had been driving the truck at the time of the accident.

In investigating the accident, law enforcement officers also observed that the driver seat of the pickup truck was in a position that would have made it very difficult for someone of Alissa's height to reach the gas and brake pedals. Shortly after receiving Alissa's written statement, the officers returned to the Zerr address to speak with Alissa in person. However, when the officers asked them about the position of the seat, Zerr and Alissa continued to claim that she was the one who had been driving at the time of the accident.

On November 11, 2015, Officer George Naylor of the Overland Park Police Department made contact with C.Z. again and he gave the officer the story Zerr had told him to tell. However, C.Z. later admitted to his biological mother that he had lied to the police. In response, C.Z.'s mother informed law enforcement officers and arranged to have her son speak to officers from the Overland Park Police Department again. On November 17, 2015—ten days after the accident and at least nine days after the 17-month-old girl had died from her injuries—C.Z. finally told the officers the truth about the accident. Specifically, C.Z. admitted that it was his father—not his stepmother—who

4

had been driving the pickup truck at the time of the accident. After learning the truth, Officer Naylor amended the accident report and performed additional investigation to confirm C.Z.'s revised story regarding the events on the day of the accident.

On November 20, 2015, the State charged Zerr with four counts: (1) knowingly leaving the scene of an accident that resulted in injury or death, in violation of K.S.A. 2017 Supp. 8-1602(a) and (b)(4), a severity level 5 person felony; (2) contributing to C.Z.'s misconduct, in violation of K.S.A. 2017 Supp. 21-5603(a)(5), a severity level 7 person felony; (3) contributing to J.Z.'s misconduct, in violation of K.S.A. 2017 Supp. 21-5603(a)(5), a severity level 7 person felony; and (4) interference with a law enforcement officer discharging an official duty in the case of a felony, in violation of K.S.A. 2017 Supp. 21-5904(a)(3), a severity level 9 nonperson felony. On March 29, 2016, the State amended the complaint to add a count of driving while suspended, in violation of K.S.A. 2017 Supp. 8-262, a class B nonperson misdemeanor. Finally, on April 4, 2016, the State filed a second amended complaint, refining the language of count four relating to the charge of interference with law enforcement performing an official felony investigation duty.

On April 4, 2016, a three-day jury trial commenced in district court. The State offered the testimony of 18 witnesses and admitted over 20 exhibits into evidence. Zerr testified in his own defense but chose not to call any additional witnesses. On April 7, 2016, the jury returned a lesser-included guilty verdict for the first count: leaving the scene of an accident resulting in the death of a person. The jury also convicted Zerr on all of the other charges set forth in the second amended complaint.

On April 13, 2016, Zerr filed a motion for a judgment of acquittal. In his motion, Zerr argued that the State presented insufficient evidence to convict him on any of the charges other than driving while his license was suspended. A week later, Zerr also filed a motion for arrest of judgment. In that motion, Zerr challenged the sufficiency of the

5

second amended complaint as to the charges of leaving the scene of a fatal accident, contributing the misconduct of children, and interference with law enforcement. At a hearing held on September 20, 2016, the district court denied both motions.

The district court held a sentencing hearing on November 22, 2016. At the hearing, the district court sentenced Zerr to a controlling sentence of 30 months of prison time with a consecutive term of 6 months in jail but placed him on probation for 24 months of probation, with 24 months of postrelease supervision. Furthermore, the district court sentenced Zerr to 60 days of "shock time" in jail. On the same day, Zerr filed this appeal. Although he has appealed each of his other convictions, Zerr does not appeal from his conviction for driving while his license was suspended.

ANALYSIS

*Sufficiency of the Evidence—Leaving the Scene of a Fatal Accident*

On appeal, Zerr contends that the State failed to present sufficient evidence to convict him of leaving the scene of a fatal accident in violation of K.S.A. 2017 Supp. 8-1602(a) and (b)(4). In the second amended complaint, the State had charged Zerr with leaving the scene of an accident resulting in injury or death in which he knew or should have known that the accident resulted in injury or death in violation of K.S.A. 2017 Supp. 8-1602(a) and (b)(5). However, the district court not only instructed on that charge but also gave a lesser included instruction based on K.S.A. 2017 Supp. 8-1602(a) and (b)(4). Ultimately, the jury determined that Zerr was guilty of the lesser included offense of leaving the scene of an accident resulting in the death of a person.

It is important to recognize that Zerr is not challenging the jury instructions given by the district court in this appeal. Instead, he is only challenging the sufficiency of the evidence presented. "'When the sufficiency of evidence is challenged in a criminal case,

6

this court reviews the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). When reviewing the evidence, we presume the jury believed the State's evidence and to have drawn from it all reasonable inferences favorable to the State. *State v. Kettler*, 299 Kan. 448, 472, 325 P.3d 1075 (2014). In doing so, we do not reweigh the evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility. *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016).

Here the jury determined that Zerr was guilty of violating K.S.A. 2017 Supp. 8-1602(a) and (b)(4), which provides:

"(a) The driver of any vehicle involved in an accident resulting in injury to, great bodily harm to or death of any person or damage to any attended vehicle or property shall immediately stop such vehicle at the scene of such accident . . . and . . . shall remain at the scene of the accident until the driver has fulfilled the requirements of K.S.A. 8-1604, and amendments thereto.

"(b) A person who violates subsection (a) when an accident results in:

. . . .

(4) The death of any person shall be guilty of a severity level 6, person felony . . . ."

In turn, K.S.A. 2017 Supp. 8-1604 requires:

"(a) (1) The driver of any vehicle involved in an accident resulting in injury to or death of any person, or damage to any attended vehicle or property, shall give such driver's name, address and the registration number of the vehicle such driver is driving, and upon request shall exhibit such driver's license or permit to drive, the name of the company with which there is in effect a policy of motor vehicle liability insurance

7

covering the vehicle involved in the accident and the policy number of such policy to any person injured in such accident or to the driver or occupant of or person attending any vehicle or other property damaged in such accident, and shall give such information and upon request exhibit such license or permit and the name of the insurer and policy number to any police officer at the scene of the accident or who is investigating the accident.

(2) Such driver, insofar as possible, shall immediately make efforts to determine whether any person involved in such accident was injured or killed, and shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary, or if such carrying is requested by the injured person.

"(b) If no police officer is present, the driver of any vehicle involved in such accident, or any occupant of such vehicle 18 years of age or older, shall immediately report such accident, by the quickest available means of communication, to the nearest office of a duly authorized police authority if:

(1) there is apparently property damage of $1,000 or more;

(2) any person involved in the accident is injured or killed; or

(3) the persons specified in subsection (a) are not present or in condition to receive such information."

Reviewing the record in the light most favorable to the State and giving all reasonable inferences in favor of the State, we find that there was substantial evidence presented at trial upon which a jury could rely upon to determine beyond a reasonable doubt that Zerr was guilty of violating K.S.A. 2017 Supp. 8-1602(a) and (b)(4). The State presented evidence that, immediately following the accident, Zerr searched for his cellphone while bystanders helped his son out of the truck. Once Zerr found his cellphone, he did not use it to call 911 nor did he assist anyone injured in the accident—

8

other than perhaps his son—and he did not exchange information with the other drivers. Moreover, Zerr did not remain at the scene of the accident to speak to law enforcement officers or to have his son examined by first responders. Instead, Zerr asked a bystander to give him and his son a ride home.

Based on this evidence—as well as other evidence presented at trial—a reasonable jury could determine that Zerr did not comply with K.S.A. 2017 Supp. 8-1602(a) and (b)(4). Zerr seems to suggest that he could fulfill his statutory duties simply by checking on a single individual involved in an accident. The statute requires a driver involved in an accident to, "insofar as possible . . . immediately make efforts to determine whether any person involved in such accident was injured or killed, and shall render to any person injured in such accident reasonable assistance . . . ." K.S.A. 2017 Supp. 8-1604(a)(2). Even if we accepted this interpretation, the jury in this case could have reasonably inferred from the evidence that Zerr did not render aid to anyone involved in the accident—including his son. The evidence suggests that while Zerr was searching for his cellphone, it was bystanders—not Zerr—who assisted his son out of the pickup truck. Then, instead of waiting for first responders to arrive, Zerr had someone take him and his son home.

We, therefore, conclude that there is substantial evidence in the record upon which a rational fact-finder could determine beyond a reasonable doubt that Zerr violated the statutory requirements under K.S.A. 2017 Supp. 8-1602(a) and (b)(4).

*Sufficiency of the Evidence—Contributing to a Child's Misconduct*

Zerr next contends the State offered insufficient evidence to support the jury's verdict finding him guilty of two counts of contributing to a child's misconduct pursuant to K.S.A. 2017 Supp. 21-5603. Specifically, Zerr argues that he could not have contributed to C.Z.'s or J.Z.'s misconduct because the law enforcement officers were

9

investigating "the offense of leaving the scene of an accident resulting in death of a person" prior to the 17-month-old girl being pronounced dead. Furthermore, Zerr argues that encouraging C.Z. and J.Z. to obstruct, resist, or oppose a law enforcement officer is a different crime from encouraging them to lie to an officer.

Our standard of review is as outlined in the previous section of this opinion. When the sufficiency of evidence is challenged in a criminal case, we review the evidence presented at trial in a light most favorable to the State. *State v. Rosa*, 304 Kan. at 432-33. Here, the State charged Zerr with violating K.S.A. 2017 Supp. 21-5603(a)(5), encouraging a child under 18 years of age to commit an act that, if committed by an adult, would be a felony. Moreover, the district court instructed the jury that it could find Zerr guilty if it found beyond a reasonable doubt that

"1. Officers were discharging an official duty, namely investigating the offense of leaving the scene of an accident resulting in death of a person.

"2. [That] C.Z./J.Z. knowingly obstructed, resisted or opposed the officers in discharging that official duty.

"3. The act of the defendant substantially hindered or increased the burden of the officer in performance of the officer's official duty.

"4. At the time C.Z./J.Z. knew or should have known that the officers were law enforcement officers.

"5. This act occurred on or about the 7th day of November, 2015, in Johnson County, Kansas."

The determination of whether an investigation is for a felony or for a misdemeanor is up to the officer's understanding of the nature of the investigation at the time of the interference. *State v. Lundquist*, 30 Kan. App. 2d 1148, 1154, 55 P.3d 928 (2002), *rev. denied* 275 Kan. 967 (2003). At trial, Deputy Smith testified that he believed based on his observations at the scene of the accident that at least one person would die and, unfortunately, he was correct in his belief. As the evidence reflects, the 17-month-old girl died within a matter of hours after the accident—either on the night of November 7 or on

the morning of November 8. As such, we cannot say that it was unreasonable for law enforcement officers to immediately begin investigating the offense of leaving the scene of an accident resulting in death of a person. Moreover, the jury could reasonably infer from the evidence that as a result of Zerr instructing his son to lie, the truth regarding who was actually driving the pickup at the time of the accident did not come out until C.Z. finally told the law enforcement officers the truth nine days after the minor child had died.

Next, Zerr argues that C.Z. and J.Z. did not obstruct, resist, or oppose law enforcement officers by lying to them. Specifically, Zerr argues that because K.S.A. 2017 Supp. 21-5904(a)(1)(C) and (a)(2) are more specific statutes, the State should have alleged those crimes as the underlying felonies. "'Whether there has been an obstruction of official duty must depend upon the particular facts of each case . . .' '"[T]o obstruct is to interpose obstacles or impediments, to hinder, impede or in any manner interrupt or prevent, and this term does not necessarily imply the employment of direct force, or the exercise of direct means."' . . . The crime encompasses both physical acts and oral statements. [Citations omitted.]" *State v. Brown*, 305 Kan. 674, 690, 387 P.3d 835 (2017). Regardless of whether the State could have charged Zerr under other statutes, we find that a jury could find him guilty of the crime charged based on the evidence presented at trial and the reasonable inferences to be drawn from such evidence.

The jury heard testimony that Zerr instructed C.Z. and J.Z. to both lie to law enforcement officers investigating the case. Furthermore, the jury heard evidence that C.Z. did in fact lie to the police and did not correct his story for well over a week following the accident. On the other hand, it does not appear that J.Z. ever lied to the police despite her father instructing her to do so. Regardless, Zerr's actions in instructing J.Z. to lie to law enforcement officers would have obstructed the investigation had she followed her father's instructions. Hence, we find that the State offered substantial evidence upon which a jury could conclude that Zerr was guilty of violating K.S.A. 2017

11

Supp. 21-5603(a)(5) beyond a reasonable doubt by instructing both of his minor children to commit an act that, if committed by an adult, would be a felony.

Zerr also argues that instructing his minor children to lie to law enforcement officers did not substantially hinder or increase their burden in investigating the accident. To rise to criminal obstruction, the act must "'have substantially hindered or increased the burden of the officer in carrying out his official duty.'" *Brown*, 305 Kan. at 690. As this court has held, delaying an investigation by only a few minutes is not a substantial hindrance. *State v. Everest*, 45 Kan. App. 2d 923, 930, 256 P.3d 890 (2011), *rev. denied* 293 Kan. 1109 (2012). However, a reasonable fact-finder could conclude based on the evidence presented at the trial of this case that Zerr's actions led to a delay in the investigation—and to a diversion of the officers' attention—for ten days from the day of the accident until C.Z. finally told the truth about who was driving the pickup at the time of the accident.

We, therefore, conclude that there is substantial evidence in the record upon which a rational fact-finder could find Zerr guilty beyond a reasonable doubt of two counts of contributing to a child's misconduct pursuant to K.S.A. 2017 Supp. 21-5603.

*Sufficiency of the Evidence—Interference with Police Duty*

Zerr also contends that the State offered insufficient evidence at trial to convict him of obstructing, resisting, or opposing law enforcement officers in the discharge of their official duty in violation of K.S.A. 2017 Supp. 21-5904(a)(3). Zerr's argument follows the same reasoning as used in the previous section. Moreover, our standard of review is the same as that stated in the two previous sections of this opinion.

At trial, the district court instructed the jury it could find Zerr guilty if it found beyond a reasonable doubt that

12

"1. Deputy Greg Smith was discharging an official duty, namely investigating the offense of leaving the scene of an accident resulting in injury or death.

"2. The defendant knowingly obstructed, resisted or opposed Deputy Greg Smith in discharging that official duty.

"3. The act of the defendant substantially hindered or increased the burden of the officer in the performance of the officer's official duty.

"4. At the time the defendant knew or should have known that Deputy Greg Smith was a law enforcement officer.

"5. This act occurred on or about the 7th day of November, 2015, in Johnson County, Kansas."

Zerr suggests, in passing, that the jury instruction is erroneous. However, he has failed to brief the question of the validity of the jury instruction. Moreover, during oral argument, Zerr's counsel represented to the court that his client is not challenging the jury instructions on appeal. Thus, we find any argument regarding the propriety of the jury instruction to be abandoned. *State v. Sprague,* 303 Kan. 418, 425, 362 P.3d 828 (2015).

Based on our review of the record on appeal, we find substantial evidence upon which the jury could have found beyond a reasonable doubt that Deputy Smith was discharging his official duties by investigating the offense of leaving the scene of an accident resulting in injury or death. Moreover, there is evidence that Deputy Smith and the other law enforcement officers at the scene of the accident knew that several people involved had suffered significant injuries in the accident—even before the 17-month-old child died. Moreover, a reasonable fact-finder could infer based on the evidence that Zerr's misleading statements made to Deputy Smith—who had identified himself as a law enforcement officer—regarding who was driving his pickup truck at the time of the accident substantially hindered or increased the burden of the officer in the performance his official duties.

Again, Zerr argues that other criminal statutes more appropriately define his crime of providing false information to Deputy Smith. However, the Kansas Supreme Court has held that any act can be considered criminal obstruction, if it is intended to impede an investigation. *Brown*, 305 Kan. at 690. Here, the jury heard testimony that Zerr intentionally lied to Deputy Smith regarding who was driving the pickup truck involved in the accident. Although perhaps the State may have chosen to charge Zerr with a different crime, we find that there is substantial evidence in the record upon which a jury could find him guilty of the crime charged beyond a reasonable doubt.

*Sufficiency of Charging Document*

Finally, Zerr contends that the second amended complaint failed to properly advise him of the specific allegations asserted against him by the State. When a defendant asserts deficiencies in a charging document on appeal, our standard of review is de novo. It has been said that a failure to allege statutory elements of a crime in a charging document amounts to a failure to charge the crime. *State v. Dunn*, 304 Kan. 773, 819-21, 375 P.3d 332 (2016). If a charging document infringes upon a party's constitutional rights, such infringement may only be found to be harmless where the party benefiting from the error persuades us "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., proves there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 [1967]).

Zerr first attacks count four in the second amended complaint, which reads:

"That on or about the 7th day of November, 2015, in the County of Johnson, State of Kansas, GREGORY JOSEPH ZERR did then and there unlawfully, feloniously and knowingly obstruct, resist or oppose a person authorized by law to serve process, to-

14

wit: Deputy Greg Smith, in the discharge of any official duty in the case of a felony, and further that the act of lying to Deputy Greg Smith substantially hindered or increased the burden of the officer in the performance of said official duty, a severity level 9 non-person felony, in violation of K.S.A. 21-5904(a)(3), K.S.A. 21-5904(b)(5)(A), K.S.A. 21-6804 and K.S.A. 21-6807. (interference with law enforcement, felony official duty)"

Zerr argues that the charge does not indicate what official duty Deputy Smith was discharging or how Zerr substantially hindered that duty. Under the terms of the statute, however, the charging document need only allege that Zerr obstructed, opposed, or resisted an officer performing an official duty during the investigation of a felony. K.S.A. 2017 Supp. 21-5904(a)(3) and (b)(5)(A). Here, we find that the State alleged sufficient information to advise Zerr that he was being prosecuted for "the act of lying" to Deputy Smith on November 7, 2015.

Nevertheless, even if the charging document was deemed insufficient, we do not find that Zerr's substantial rights were infringed. In *Dunn*, our Supreme Court held that, despite a charging document failing to adequately allege facts for the crime, the defendant was nevertheless unharmed as the facts indicated he understood precisely what the State intended with the charge. *Dunn*, 304 Kan. at 821. Here, Zerr only raised the possibility that he was confused about the charges he faced after the jury returned his convictions. Moreover, the affidavit that supported the criminal charges specifically asserted that he told a law enforcement officer during the investigation of the accident that Alissa drove the truck, and the affidavit asserted that C.Z. told a law enforcement officer that Zerr's statement was untrue.

A review of the record suggests that Zerr was well aware of the basis for the charges brought against him by the State and presented a vigorous defense. Furthermore, we find nothing to suggest that the jury would have reached a different verdict on this charge had the second amended complaint been worded differently.

15

We reach the same conclusion regarding counts two and three of the second amended complaint. Although Zerr argues that counts two and three are deficient as they fail to articulate what crime the State alleged he encouraged C.Z. and J.Z. to commit, the charging document reflects that Zerr encouraged his children to commit an act "which, if committed by an adult, would be a felony . . . ." Moreover, the affidavit supporting Zerr's charges specifically alleged that he had instructed his minor children to lie for him. Based on our review of the record, we find nothing to suggest that the jury would have reached a different verdict on these charges had the second amended complaint been worded differently.

Finally, Zerr's argument on count one is unpersuasive. He argues that count one fails to track the statutory language of K.S.A. 2017 Supp. 8-1602 and 8-1604. Count one reads:

> "That on or about the 7th day of November, 2015, in the County of Johnson, State of Kansas, GREGORY JOSEPH ZERR was involved in an accident resulting in death to a person, to-wit: A.R.P. ( XX/XX/14), and did willfully and feloniously fail to stop at the scene of the accident and give his name, address, or render reasonable assistance to any person injured, and GREGORY ZERR knew or reasonably should have known that such accident resulted in injury or death, a severity level 5 person felony, in violation of K.S.A. 8-1602(b)(5), K.S.A. 8-1604 and K.S.A. 21-6804 and K.S.A. 21-6807 (Leaving the scene of an accident)."

Zerr is correct that the State failed to list elements of the charged crime, and the State admits to as much in its brief. However, our Supreme Court has recognized that failing to include obvious elements of the crime does not make the charging document deficient. *Dunn*, 304 Kan. at 812-13. As rendering aid to the injured includes the element of determining if anyone is injured or killed, there is no error in omitting this element. Furthermore, the jury did not convict Zerr under the text of Count I, and instead the jury convicted Zerr of the lesser included charge of leaving the scene of an accident where

16

someone died or suffered grave injuries. Once again, based on our review of the record, we do not find anything to suggest that the jury's verdict would have been different had the second amended complaint been worded differently.

Accordingly, we are persuaded beyond a reasonable doubt that the alleged errors in the charging document that Zerr complains of did not affect the outcome of the trial in light of our review of the entire record.

Affirmed.