NOT DESIGNATED FOR PUBLICATION

No. 127,647

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ARTURO GARCIA-SILVA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK JR., judge. Submitted without oral argument. Opinion filed January 9, 2026. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, principal assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., MALONE and BOLTON FLEMING, JJ.

PER CURIAM: Arturo Garcia-Silva was convicted of interference with law enforcement, possession of methamphetamine, possession of drug paraphernalia, and driving while suspended. On appeal, Garcia-Silva raises four issues. First, Garcia-Silva argues that his conviction for interference with law enforcement under K.S.A. 21-5904(a)(3) was not supported by sufficient evidence. Second, he alleges that the district court erred in failing to require the State to prove that the responding law enforcement officer was authorized to serve process under K.S.A. 21-5904(a)(3). Third, he challenges whether sufficient evidence supported his convictions for possession of

1

methamphetamine and possession of drug paraphernalia. Finally, Garcia-Silva alleges the prosecutor committed reversible error in closing argument. After a thorough review of the record, we find no error. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On August 20, 2022, Jackson County Sheriff's Deputy Kendal Grimm conducted a traffic stop after noticing a vehicle's license plate light was not illuminated. Deputy Grimm approached the vehicle and requested identification from both occupants. The passenger immediately provided her driver's license and insurance information for the vehicle. When Deputy Grimm asked the driver for his license, the driver stated he did not have one. Deputy Grimm then asked the driver whether he had anything with his name on it. After about a minute of conversation, the driver responded that he did not.

Deputy Grimm then asked the driver for his first name, but the driver did not comply. Deputy Grimm asked for the driver's last name, and the driver first responded by engaging in additional conversation but provided the name "Garcia." The deputy again asked the driver for his first name. The driver responded that his first name was "Art." Deputy Grimm proceeded to ask what his middle initial was, but the driver replied that he did not have one. When asked for his date of birth, the driver paused, counted on his fingers, and then said he did not keep track of birthdays because he did not celebrate them. After additional hesitation, the driver finally provided September 29, 1992, as his date of birth.

Deputy Grimm returned to his patrol car and relayed the information given by the driver to dispatch, but dispatch advised him that the name and date of birth provided did not return a record. At this point, the effort to identify the driver had taken over four minutes. Deputy Grimm returned to the vehicle and asked the driver to step out. The driver delayed opening the door, prompting Deputy Grimm to open it himself. Once out

2

of the vehicle, the driver attempted to reach into his back pocket. Deputy Grimm placed the driver in handcuffs and again asked the driver for his name and date of birth. The driver responded with the name "Arturo Garcia-Silva." Deputy Grimm asked if that name was hyphenated, and Garcia-Silva responded that it was not. Seeking additional identification, Deputy Grimm asked Garcia-Silva if there was anything with his name on it. Garcia-Silva mentioned that he had mail with his identification on it. Deputy Grimm conducted a pat-down for safety and removed mail from Garcia-Silva's back pocket. The mail was a letter from the Kansas Department of Revenue addressed to Garcia-Silva, confirming his full name, address, date of birth, and driver's license number. The letter confirmed that Garcia-Silva's real birthdate was April 15, 1991—not September 29, 1992. The letter also confirmed Garcia-Silva's name was hyphenated. The time from the initial stop to finding the letter identifying Garcia-Silva was approximately seven minutes. In the same back pocket of Garcia-Silva's pants, Deputy Grimm located a clear plastic package containing a white crystalline substance later confirmed by the Kansas Bureau of Investigation (KBI) laboratory as methamphetamine. Garcia-Silva denied knowing the methamphetamine was in his pocket and denied using drugs. As a result of these events, Garcia-Silva was taken into custody.

On August 22, 2022, the State charged Garcia-Silva with possession of methamphetamine, interference with law enforcement, possession of drug paraphernalia, and driving while suspended. The case proceeded to a jury trial on February 22, 2024. Garcia-Silva testified in his own defense. During cross-examination, the State asked Garcia-Silva if he knowingly attempted to evade providing Deputy Grimm with his name because he did not want to go back to jail, to which Garcia-Silva responded, "Well, yes."

The jury found Garcia-Silva guilty of all charges. At sentencing, the district court ordered all sentences to run concurrent, resulting in a controlling sentence of 13 months. The court suspended Garcia-Silva's sentence and placed him on 18 months of probation.

Garcia-Silva timely appeals.

ANALYSIS

DID SUFFICIENT EVIDENCE SUPPORT GARCIA-SILVA'S CONVICTION FOR INTERFERENCE WITH LAW ENFORCEMENT UNDER K.S.A. 21-5904(a)(3)?

Garcia-Silva argues that there was insufficient evidence to support his conviction for interference with law enforcement.

*Standard of Review*

"When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations." *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018) (citing *State v. Lloyd*, 299 Kan. 620, 632, 325 P.3d 1122 [2014]).

*Analysis*

Garcia-Silva was charged and convicted of interference with law enforcement, which is defined in K.S.A. 21-5904(a)(3) as "knowingly obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty." K.S.A. 21-5904(a)(3).

A finding of guilt on this charge requires the State to prove each element. *Chandler*, 307 Kan. at 669. In *State v. Brown*, 305 Kan. 674, 690, 387 P.3d 835 (2017), the Kansas Supreme Court held that the elements of an offense charged under the "official duty" clause in K.S.A. 21-5904(a)(3) are: (1) an identified law enforcement

4

officer was carrying out some official duty; (2) the defendant knowingly and willfully obstructed or opposed the officer; and (3) the defendant knew or should have known that the person being opposed was a law enforcement officer. 305 Kan. at 690.

While K.S.A. 21-5904(a)(3) does not explicitly list "substantial hindrance" as a statutory element, the Kansas Supreme Court has adopted this requirement. "There is, however, one requirement which seems to be emphasized in all of the cases—the action of the defendant charged with obstruction of official duty must have substantially hindered or increased the burden of the officer in carrying out his official duty." *State v. Parker*, 236 Kan. 353, 364, 690 P.2d 1353 (1984); see also *Brown*, 305 Kan. at 690; *State v. Latimer*, 9 Kan. App. 2d 728, 733, 687 P.2d 648 (1984).

We pause to note that "interference with law enforcement" was previously known as the crime of "obstruction of official duty." The Kansas Criminal Code was recodified in 2011, and K.S.A. 21-3808 (Torrence 2007), the statute describing the offense of "obstruction of official duty," was repealed. The Kansas Legislature reorganized and renamed the provision in K.S.A. 21-5904(a)(3) without materially altering the elements.

Garcia-Silva relies on *State v. Everest*, 45 Kan. App. 2d 923, 929, 256 P.3d 890 (2011), in support of his argument that his actions did not provide substantial evidence of interference. In *Everest*, an officer stopped a vehicle late at night for not having a properly illuminated license tag. When asked, Everest lied to the officer about his identity. When the officer ran the given name through dispatch, dispatch reported no record. The officer eventually arrested Everest for driving under the influence (DUI), and during a search of his vehicle found an identification card showing Everest's true name and date of birth. Everest continued to deny his identity but eventually admitted who he was. 45 Kan. App. 2d at 924.

5

In considering Everest's actions, a panel of our court found "no substantial evidence that Everest substantially hindered or increased Rankin's burden in carrying out his investigation." 45 Kan. App. 2d at 930. The panel noted that only three minutes passed "while Rankin took the false information from Everest, checked with dispatch, and returned to Everest's vehicle to continue the DUI investigation." 45 Kan. App. 2d at 929.

While under *Everest,* a short, temporal delay in exercising an officer's duties is not sufficient evidence of interference, Garcia-Silva's actions in this case are easily distinguished. First, the seven minutes that elapsed from the initial stop to when Deputy Grimm confirmed Garcia-Silva's identity was a significantly longer period of time than the three minutes that elapsed in *Everest.* And the time from Garcia-Silva's stop to his arrest was 15 minutes.

Second, in *Everest*, there was a single act of providing a false name that the State used to charge Everest. Here, Garcia-Silva was dishonest with Deputy Grimm multiple times.

Once pulled over, Garcia-Silva was asked whether he had anything with his name on it and he replied that he did not. This was not true as he was carrying a letter from the Kansas Department of Revenue with his name, address, date of birth, and driver's license number. Garcia-Silva also declined to provide his first name. Eventually, Garcia-Silva provided only portions of his name: "Art" and "Garcia." Those were the names used by dispatch to try to identify him, with no result. Garcia-Silva also pretended not to know his date of birth, counting on his fingers, and eventually said his birth date was September 29, 1992. His real date of birth is April 15, 1991. Finally, Garcia-Silva told Deputy Grimm his name was not hyphenated. The facts of this case are distinguishable from Everest.

Kansas courts have found that providing false information during a traffic stop may properly form the basis of an interference with law enforcement conviction where the defendant's actions substantially hindered or increased the burden of the officer in carrying out his or her official duty. In *State v. Latimer*, 9 Kan. App. 2d 728, 687 P.2d 648 (1984), a panel of this court considered whether Latimer obstructed a police officer in performance of his legal duties by giving false identification.

> "When defendant Latimer falsely identified himself to Officer Lane, defendant was a criminal suspect who was carrying no identification. Defendant's false identity was given in response to a direct question by a police officer during the course of a criminal investigation. We find that under these circumstances, defendant's false identification impeded the course of the investigation and hindered Officer Lane in carrying out his duties in violation of K.S.A. 21-3808." 9 Kan. App. 2d at 733.

We find here Garcia-Silva substantially hindered and increased the burden of Deputy Grimm in conducting this traffic stop. Garcia-Silva refused to give his identification after being asked multiple times. Garcia-Silva stated he did not have any document showing his identity when he had that very item in his back pocket. He then failed to respond to requests for his name and finally gave a shortened version of his name "Art Garcia." He also provided a false birth date. Even after finally providing his name, Garcia-Silva stated his name was not hyphenated. At trial Garcia-Silva admitted that he knowingly attempted to keep Deputy Grimm from learning his name because he did not want to go back to jail. Garcia-Silva's actions substantially increased the burden of Deputy Grimm in conducting this traffic stop.

After reviewing all the evidence in a light most favorable to the State, we find that a rational factfinder could have found the defendant guilty of interference with law enforcement beyond a reasonable doubt. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

DID THE DISTRICT COURT ERR BY FAILING TO REQUIRE THE STATE TO PROVE THAT DEPUTY GRIMM WAS "AUTHORIZED BY LAW TO SERVE PROCESS"?

Garcia-Silva next argues that the evidence was insufficient to support his conviction for interference with law enforcement because the State offered no evidence that Deputy Grimm was authorized by law to serve process.

*Standard of Review*

Garcia-Silva challenges the sufficiency of evidence supporting his conviction for interference with law enforcement because he believes no evidence was presented regarding Deputy Grimm's authorization to serve process. Resolving this issue involves examining the elements of the crime which are found at K.S.A. 21-5904(a)(3). Statutory interpretation presents a question of law over which appellate courts have unlimited review. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024).

If we determine that K.S.A. 21-5904(a)(3) required the State to prove that Deputy Grimm was authorized to serve process, we then consider whether there was sufficient evidence at trial to support that factual finding. "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021) (citing *State v. Potts*, 304 Kan. 687, 694, 374 P.3d 639 [2016]).

*Discussion*

Garcia-Silva argues that "a plain and unambiguous reading of the interference statute requires that the obstruction be of 'any person authorized by law to serve process.'

8

K.S.A. 21-5904(a)(3)." He points out that the record does not contain evidence that the officers in this case were "authorized by law to serve process." Garcia-Silva's interpretation of this statute is incorrect.

K.S.A. 21-5904(a)(3) defines the crime of interference with law enforcement:

"(a) Interference with law enforcement is:

. . . .

(3) Knowingly obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty."

Garcia-Silva's interpretation of K.S.A. 21-5904(a)(3) improperly collapses the two statutory clauses into one. Under the plain language of the statute, there are two different ways of committing the crime of interference with law enforcement. Under the first clause of the subsection, the plain language of K.S.A. 21-5904(a)(3) establishes that the officer's authorization to serve process is only an essential element when the charge involves interference with the service or execution of process. Under the second clause of the subsection, a defendant may be guilty of interference with law enforcement by interfering during the performance of an official duty by a law enforcement officer. "When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words." *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022).

The two different methods of violating K.S.A. 21-5904(a)(3) have been examined under Kansas law. These two methods also form the basis of two different Kansas Pattern Instructions (PIK Crim. 4th 59.030 and 59.040). Garcia-Silva argues that because PIK Crim. 4th 59.030 and 59.040 list slightly different elements, the "authorized by law to serve process" element should apply to both versions of the crime. But Garcia-Silva's

9

argument fails because the pattern instructions simply mirror the two different ways of violating K.S.A. 21-5904(a)(3). And Garcia-Silva fails to support his argument with any authority. Failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue. *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020).

Early cases considered the two different ways of committing interference with law enforcement under K.S.A. 21-3808 (Torrence 2007), the predecessor statute to K.S.A. 21-5904(a)(3). The difference between the two statutes is minimal:

> "Obstructing legal process or official duty is knowingly and intentionally obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty." K.S.A. 21-3808(a) (Torrence 2007) (repealed 2011).

Under K.S.A. 21-3808 (Torrence 2007),

> "the State was required to prove that an identified law enforcement officer was carrying out some official duty, and that each defendant knowingly and willfully obstructed or opposed that officer in the performance of that duty. The State was also required to show that each defendant knew or should have known that the person he opposed was a law enforcement officer." *State v. Parker*, 236 Kan. 353, 364-65, 690 P.2d 1353 (1984).

"As stated in *State v. Timley*, 25 Kan. App. 2d 779, 785, 975 P.2d 264 (1998), *rev. denied* 266 Kan. 1115 (1999), 'The statute thus encompasses two different possible scenarios—one in which an individual is obstructed in the service or execution of process or order of a court, the other in which an officer is obstructed in the discharge of any official duty.'" *State v. McCoy*, 34 Kan. App. 2d 185, 190-91, 116 P.3d 48 (2005).

Later cases interpreting K.S.A. 21-5904(a)(3) reached the same result. "After reading the statute, we see that there are two means by which interference may be committed: (1) obstructing the service of a warrant or other legal process, and (2) obstructing the discharge of any official duty. See K.S.A. 2021 Supp. 21-5904(a)(3)." *State v. Dickerson*, No. 125,529, 2024 WL 62834, at *3 (Kan. App. 2024) (unpublished opinion).

In this case, the complaint clearly charges Garcia-Silva with violating the second clause of K.S.A. 21-5904(a)(3). The complaint alleges that Garcia-Silva obstructed Deputy Kendal Grimm by providing a false name and date of birth, and those actions substantially hindered or increased Grimm's burden while in the performance of his official duties. And the evidence at trial supported those allegations. The evidence at trial showed that Deputy Grimm was a uniformed, clearly identified law enforcement officer engaged in his official duty of attempting to stop and investigate Garcia-Silva for an improperly illuminated license plate. Deputy Grimm requested identification and conducted a lawful investigation. The State was not required to prove that Deputy Grimm was "authorized to serve process," because this case involved the discharge of an official duty, not the service or execution of legal process. We therefore need not consider then whether Garcia-Silva's rights to due process and to a jury trial under the Sixth Amendment to the U.S. Constitution and the Kansas Constitution Bill of Rights were violated by the district court's failure to include an element of the crime. The State was not required to prove Deputy Grimm was authorized by law to serve process.

DID THE DISTRICT COURT ERR IN INSTRUCTING THE JURY?

Garcia-Silva raises two arguments pertaining to jury instructions. First, he believes that the district court erred by failing to instruct the jury on an element of the crime. He specifically argues that the district court was required to instruct the jury that it must find that Deputy Grimm was authorized by law to serve process. But as we have explained,

11

whether Deputy Grimm was authorized by law to serve process was not an element of the crime as charged in this case under K.S.A. 21-5409(a)(3). We need not revisit Garcia-Silva's argument here.

Garcia-Silva's second argument is different. He argues that the court erred by utilizing the language "obstruction of official duty" rather than "interference with law enforcement" in a jury instruction.

*Standard of Review*

Appellate courts review the legal challenges to an instruction de novo. *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012).

> "When analyzing jury instructions, appellate courts follow a three-step process: (1) determine whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) consider the merits of the claim to determine whether error occurred below; and (3) assess whether the error requires reversal—in other words, whether the error can be deemed harmless." *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025).

The challenge raised by Garcia-Silva is related to Instruction 11. Garcia-Silva did not object to Instruction 11 at trial. Thus, we review the instruction to determine whether it was clearly erroneous. K.S.A. 22-3414(3) states in pertinent part:

> "No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous." K.S.A. 22-3414(3).

*Discussion*

Garcia-Silva contends that the district court erred by instructing the jury that he was charged with "obstruction of official duty." He argues that this phrase refers to a crime that no longer exists under Kansas law and that the State instead charged him with "interference with law enforcement." The district court instructed the jury in Instruction 11:

"INSTRUCTION NO. 11

"The defendant is charged with obstruction of official duty. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

1. Deputy Kendal Grimm was discharging an official duty, namely conducting a traffic stop.

2. The defendant knowingly obstructed Deputy Kendal Grimm in discharging that official duty by failing to provide correct identifying information.

3. The act of the defendant substantially hindered or increased the burden of the officer in the performance of the officer's official duty.

4. At the time the defendant knew or should have known that Deputy Kendal Grimm was a law enforcement officer.

5. This act occurred on or about the 20th day of August, 2022, in Jackson County, Kansas.

"PIK 4th 59.040."

The procedure we must use to review Instruction 11 is well-established:

"When a defendant does not object to a jury instruction at trial, that failure does not prevent appellate review if the error is clearly erroneous. To determine whether an instruction or a failure to give an instruction was clearly erroneous, the appellate court must first determine whether there was any error at all. To make that determination, the appellate court must consider whether the subject instruction was legally and factually

13

appropriate, employing an unlimited review of the entire record." *State v. Herbel*, 296 Kan. 1101, Syl. ¶ 8, 299 P.3d 292 (2013).

We first consider whether Instruction 11 was legally appropriate. Garcia-Silva's complaint is that the district court erred in referring to the title of the crime as obstruction of official duty. "In fact, when instructing the jury, the district court said that the 'defendant is charged with obstruction of official duty.' The state did not charge Mr. Garcia-Silva with obstruction of official duty (and could not given that such an offense no longer exists in the Kansas statutes); the state charged Mr. Garcia-Silva with interference with law enforcement." Garcia-Silva does not argue that the instruction improperly stated the elements of the crime. And a comparison of Instruction 11 to PIK Crim. 4th 59.040 confirms that except for the title of the crime, the district court precisely followed PIK Crim. 45th 59.040.

Garcia-Silva's argument is unpersuasive. Although the instruction referred to "obstruction of official duty," that terminology reflects the historical name of the offense now codified as "interference with law enforcement" under K.S.A. 21-5904(a)(3). Before the 2011 recodification of the Kansas Criminal Code, the offense was titled "obstructing official duty" under K.S.A. 21-3808 (Torrence 2007) (repealed 2011). The Kansas Legislature later reorganized and renamed the provision without materially altering the elements. K.S.A. 21-5904(a)(3) is substantively identical to its predecessor, K.S.A. 21-3808 (Torrence 2007), which addressed obstruction of official duty.

Even if the district court incorrectly referred to the crime as "obstruction of official duty," because Garcia-Silva failed to object to the instruction at trial, we review the instruction to determine if it was clearly erroneous. K.S.A. 2022 Supp. 22-3414(3).

To be clearly erroneous, a jury instruction must be legally or factually inappropriate. Additionally, the court must be firmly convinced the jury would have

reached a different verdict if the instruction had not been given. The party claiming the jury instruction was erroneous has the burden to show both error and prejudice. *State v. Crosby*, 312 Kan. 630, 639, 479 P.3d 167 (2021).

Garcia-Silva has failed to prove that he was prejudiced by the title of the crime found in Instruction 11. In fact, Garcia-Silva fails to argue prejudice as to this specific argument. An issue not briefed is deemed waived or abandoned. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021). Instruction 11 was not clearly erroneous.

### DID SUFFICIENT EVIDENCE SUPPORT THE CONVICTIONS OF POSSESSION OF METHAMPHETAMINE AND POSSESSION OF DRUG PARAPHERNALIA?

Garcia-Silva argues that the evidence presented at trial was insufficient to support his convictions of possession of methamphetamine and possession of drug paraphernalia because no evidence was presented that Garcia-Silva *knowingly* possessed methamphetamine or paraphernalia.

*Standard of Review*

> "When a defendant challenges the sufficiency of the evidence, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. [Citation Omitted.]" *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024).

A verdict may be supported by circumstantial evidence if such evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue. Circumstantial evidence, to be sufficient, need not exclude every other reasonable conclusion. *State v. Colson*, 312 Kan. 739, 750, 480 P.3d 167 (2021).

*Analysis*

Garcia-Silva was convicted of possession of methamphetamine under K.S.A. 21-5706(a) and possession of drug paraphernalia under K.S.A. 21-5709(b)(2). Although culpable mental state is not listed in either statute, the Kansas Supreme Court has recognized that the culpable mental state is found within the definition of the word "possession." *State v. Rizal*, 310 Kan. 199, 206-07, 445 P.3d 734 (2019).

"Possession" means "knowingly having joint or exclusive control over an item or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 21-5111(v). "A person acts 'knowingly,' or 'with knowledge,' with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist." K.S.A. 21-5202(i).

A panel of this court considered a similar factual situation in *State v. Wolf*, No. 121,102, 2020 WL 1814286 (Kan. App. 2020) (unpublished opinion). In *Wolf,* an officer removed a wallet from Wolf's pocket during a traffic stop. The officer found a small baggie containing methamphetamine residue inside the wallet. Wolf was convicted of possession of methamphetamine. On appeal, Wolf argued that the evidence was insufficient to support his conviction because the State never proved that he knew the baggie was in his wallet. The panel found sufficient evidence supported the conviction because the baggie was in the defendant's wallet which was removed from his pocket, and the fact-finder could infer knowledge of possession. 2020 WL 1814286, at *2.

Another factually similar case is *State v. Her*, No. 112,815, 2016 WL 3365755 (Kan. App. 2016) (unpublished opinion). In *Her*, police discovered a crystal substance in the defendant's pants during a lawful search that ensued following an investigation of a stolen vehicle. The defendant challenged the sufficiency of the State's evidence by

arguing that the drugs and pipe had been placed in their jeans by a third person. 2016 WL 3365755, at *1. A panel of this court ruled that the location of the drugs in the defendant's pants pocket was sufficient to allow a jury to reasonably infer defendant's knowledge and intent to possess the drugs. 2016 WL 3365755, at *2.

Similarly, in *State v. McConnell*, 33 Kan. App. 2d 711, 716, 106 P.3d 1148 (2005), this court upheld a conviction for possession of methamphetamine based on circumstantial evidence. The evidence included an officer finding a bottle containing the drugs in the defendant's front pants pocket, defendant admitting he placed the bottle in his pocket, and his explanation that the pants were not his own.

As in *Wolf*, *McConnell*, and *Her*, we have no trouble concluding there was sufficient evidence for a jury to reasonably infer that Garcia-Silva knowingly possessed methamphetamine and drug paraphernalia. Garcia-Silva's knowledge of possession could be inferred because the items were in his pocket, and he was in control of his pocket.

We find that considering the evidence in a light most favorable to the State, a reasonable jury could conclude that Garcia-Silva knowingly possessed methamphetamine and drug paraphernalia.

DID THE PROSECUTOR COMMIT REVERSIBLE ERROR DURING CLOSING ARGUMENT?

Garcia-Silva's final argument is that the prosecutor misstated the law during closing argument by stating, "The meth was in the defendant's pocket; therefore, I would ask that you find the defendant guilty of possession . . . ." Garcia-Silva argues that the prosecutor erred "by insinuating that Mr. Garcia-Silva knowingly possessed methamphetamine and paraphernalia solely because it was found in his pocket. This is an incorrect statement of law because physical possession alone does not equal knowledge."

17

*Standard of Review*

An appellate court uses a two-step process to evaluate claims of prosecutorial error:  error and prejudice. *State v. Sieg*, 315 Kan. 526, 535, 509 P.3d 535 (2022).

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., where there is no reasonable possibility that the error contributed to the verdict.'" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

*Discussion*

Prosecutors are given wide latitude in the language used during closing arguments, so long as the argument is consistent with the evidence. This includes the freedom to craft arguments that include reasonable inferences based on the evidence. *State v. Pabst*, 268 Kan. 501, 507, 996 P.2d 321 (2000). A prosecutor's closing remarks fall outside the wide latitude given when the remarks comment on facts not in evidence, divert the jury's attention from its role as a fact-finder, or serve no purpose other than to inflame the passions of the jury. *State v. Stimec*, 297 Kan. 126, 128, 298 P.3d 354 (2013).

Garcia-Silva argues that the prosecution's statement "can only be understood as an attempt by the state to dilute the burden of proof." He argues that when the prosecutor stated, "The meth was in the defendant's pocket; therefore, I would ask that you find the defendant guilty of possession of methamphetamine," the prosecutor misstated the law.

Garcia-Silva reasons that the prosecutor asked the jury to find him guilty without also considering whether he knowingly possessed methamphetamine.

Garcia argues that this comment was outside the wide range of latitude given to prosecutors. But closing arguments should be evaluated in context rather than in isolation. *State v. Jordan*, 317 Kan. 628, 649-50, 537 P.3d 443 (2023). And when looking at the entire context of the challenged statement, it becomes clear that the prosecutor correctly defined possession for the jury. The prosecutor summarized the evidence, noting that methamphetamine was found in Garcia-Silva's pocket, and then asked the jury to find Garcia-Silva guilty of all counts. When the challenged statement is read in context, this was not a misstatement of the law but a factual argument that the evidence of drugs in Garcia-Silva's pocket supported an inference of knowing possession. We also note that the jury was properly instructed on possession. The prosecutor's statement did not fall outside the wide latitude afforded in closing arguments.

Affirmed.